Walter A. MILLER, Appellant,

v.

STATE AND COUNTY MUTUAL FIRE INSURANCE COMPANY, Lonnie Kossuth Ledbetter, Kenneth Eugene Curtiss, and Windsor Insurance Company, Appellees.

No. 2–98–180–CV.

Court of Appeals of Texas, Fort Worth.

July 29, 1999.

Rehearing Overruled Oct. 28, 1999.

Wood, Boykin & Wolter, P.C., and Gary Norton, Corpus Christi, for Appellant.

Fletcher & Springer, L.L.P. and Steven A. Springer and David C. Colley, Dallas, for Appellees State and County Mutual Fire Insurance Company, Lonnie Kossuth Ledbetter and Kenneth Eugene Curtiss.

Fahl & Takeuchi, P.C. and Glenn J. Fahl and Michael K. Strachan, Houston, for Appellee Windsor Insurance Company.

Panel B: DAY, RICHARDS, and BRIGHAM, JJ.

## OPINION

DAVID L. RICHARDS, Justice.

This appeal arises out of a simple car accident, which has spawned three separate lawsuits in two counties and involved two intermediate appellate courts and the Texas Supreme Court. In this appeal, we consider the second suit filed by Walter A. Miller. Because we find that Miller's

claims are barred by res judicata, we affirm the trial court's summary judgment.

### FACTUAL TIME LINE

Because of the tortuous history of this case, the facts are somewhat complicated; thus, we will use a time line:

- June 1, 1992: Miller in car accident with underinsured motorist, Robert Falgout, in Nueces County. Miller was the only occupant of his car.

- March 16, 1993: Miller notifies his insurance company, State & County Mutual Fire Insurance Company, of his potential entitlement to $100,000—the per person limit under his policy for underinsured motorists. He requests permission to settle with Falgout's insurance company.

- March 23, 1993: State & County gives Miller permission to settle, and Miller settles for Falgout's policy limit of $20,000.

- July 2, 1993: Miller, on behalf of himself, his wife, and his two children, demands $300,000—the per occurrence policy limit.

- July 8, 1993: Having already advanced $10,000 to Miller for medical expenses, Windsor Insurance Company, State & County's reinsurer, tenders $90,000 to Miller, but Miller rejects this tender.

- September 24, 1993: Windsor brings a declaratory judgment action in Tarrant County against Miller and State & County and interpleads the $90,000 ("the Windsor suit").

- October 15, 1993: Miller sues State & County in the 214th District Court of Nueces County, alleging that State & County had failed and refused, and continues to fail and refuse, to pay the per occurrence limits of the policy ("Miller I"). Miller also asserts extra-contractual claims under the Deceptive Trade Practices Act and article 21.21 of the Insurance Code.

- November 29, 1993: Windsor moves for summary judgment in the Windsor suit.

- January 14, 1994: State & County files a plea in abatement in Miller I, asserting the existence of the Windsor suit.

- August 1, 1994: In the Windsor suit, the trial court denies Miller's motion to transfer venue to Nueces County.

- August 12, 1994: 214th District Court abates Miller I pending the outcome of the Windsor suit.

- October 26, 1994: In the Windsor suit, the trial court finds Windsor only liable for the $100,000 per person limit. Because Windsor had already deposited the funds with the court, "any or all liability of an insurer" has been satisfied.

- September 22, 1995: Miller sues State & County, Windsor, the president of State & County Lonnie Ledbetter, and the vice president of State & County Kenneth Curtiss for breach of the duty of good faith, tortious interference with a contract, and continuing violations of the DTPA and article 21.21 ("Miller II"). Miller files suit in the 28th District Court of Nueces County.

- October—November 1995: Windsor, State & County, Ledbetter, and Curtiss file motions to transfer venue in Miller II.

- April 25, 1996: This court of appeals affirms the trial court's judgment in the Windsor suit. *Miller v. Windsor Ins. Co.*, 923 S.W.2d 91 (Tex.App.—Fort Worth 1996, writ denied).

- July 23, 1996: 28th District Court abates Miller II pending the Windsor suit.

- October 3, 1996: The Texas Supreme court denies Miller's application for writ of error in the Windsor suit.

- March 5, 1997: 214th District Court lifts abatement in Miller I.

- March 27, 1997: State & County files a motion for summary judgment in Miller I based on res judicata, collater-

al estoppel, compulsory counterclaim, and payment based on the Windsor suit.

- April 1997: State & County, Windsor, Curtiss, and Ledbetter file motions for summary judgment in Miller II based on res judicata and collateral estoppel.
- May 30, 1997: 214th District Court grants State & County summary judgment in Miller I based on res judicata and collateral estoppel.
- July 22, 1997: 28th District Court lifts abatement in Miller II, but allows no further discovery.
- July 25, 1997: 28th District Court transfers venue of Miller II to Tarrant County.
- March 10, 1998: In Miller II, Tarrant County trial court grants summary judgment in favor of all defendants based on res judicata because of the Windsor suit and Miller I. Because of Miller's "pattern of filing groundless and duplicative suits in an attempt to relitigate claims and issues, and circumvent rulings, that were decided adversely" to Miller in the Windsor suit and in Miller I, the trial court imposes $30,000 in sanctions.
- February 18, 1999: Thirteenth Court of Appeals reverses trial court's summary judgment in Miller I, holding that because Miller's claims were permissive, Miller I was not barred by res judicata or collateral estoppel because of the Windsor suit. *Miller v. State & County Mut. Fire Ins. Co.*, 988 S.W.2d 326, 331 (Tex.App.—Corpus Christi 1999, pet. filed).

Presenting 28 issues, Miller appeals the venue transfer, the summary judgment, the stay of discovery, and the sanctions order entered in Miller II.

1. TEX. INS.CODE ANN. § 5.06–1(8) (Vernon Supp. 1999).

2. Although preclusion of relitigating venue is referred to as barred by res judicata, it is actually more accurate that it would be barred by collateral estoppel because it would

## VENUE

Miller raises four issues complaining about the trial court's order transferring venue to Tarrant County. Miller claims to be arguing all four issues together, but in the argument portion of his brief, Miller addresses only two distinct complaints: that venue was mandatory in Nueces County under article 5.06–1(8) [1] and that res judicata [2] based on the venue determination in the Windsor suit does not apply to preempt venue in Nueces County. Thus, we will consider only those complaints argued. *See* TEX.R.APP. P. 38.1(e), (h); *Windsor*, 923 S.W.2d at 93.

■ When reviewing a venue determination, we review the entire record in the light most favorable to the trial court's ruling and, if there is any probative evidence in the record that venue was proper in the county where judgment was rendered, we must uphold the trial court's venue ruling. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(b) (Vernon 1986); *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex.1993) (op. on reh'g).

■ In the Windsor suit, the trial court specifically found that venue was proper in Tarrant County. We reviewed the venue ruling and affirmed it. *Windsor*, 923 S.W.2d at 93–95. Thus, we need to determine whether this final judgment on venue in the Windsor suit irrevocably fixes venue in Tarrant County for Miller II.

■ A final judgment on venue is conclusive on the parties as to the issue of venue and irrevocably fixes venue of any suit involving the same subject matter and parties. *See Texas Employers' Ins. Ass'n v. Orozco*, 681 S.W.2d 245, 245 (Tex.App.—San Antonio 1984, no writ); *Pinney v. Cook*, 558 S.W.2d 33, 36 (Tex.Civ.App.—

be issue preclusion and not claim preclusion. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992). Thus, we will refer to the concept as being barred by collateral estoppel.

Corpus Christi 1977, no writ); *Hagemeis-ter v. Vanity Fair Properties*, 503 S.W.2d 879, 881 (Tex.Civ.App.—Tyler 1973, writ dism'd). Thus, collateral estoppel dictates that venue of any subsequent suit involving the same subject matter and the same parties as the initial suit be governed by the venue determination in the initial suit. *See Orozco*, 681 S.W.2d at 245–46; *Pinney*, 558 S.W.2d at 36.

■ First, Miller II involves the same parties as the Windsor suit. Both State & County and Windsor were parties to the Windsor suit. Although Ledbetter and Curtiss were not named in the Windsor suit, as officers of State & County, they were in privity with a party; thus, collateral estoppel would apply to them as well. *Cf. Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex.1992) (holding res judicata also applies to those in privity with parties), *cert. denied sub nom. Youell & Cos. v. Getty Oil Co.*, 510 U.S. 820, 114 S.Ct. 76, 126 L.Ed.2d 45 (1993); *Southwestern Inv. Co. v. Gibson*, 372 S.W.2d 754, 756 (Tex.Civ.App.—Fort Worth 1963, no writ) (holding additional parties in second suit do not prevent the application of res judicata based on the first suit). Further, the underlying facts giving rise to each party's claims are centered upon the issue of coverage and the parties' rights and obligations under the policy. The Windsor suit sought a declaration of the scope of coverage. The subject matter of Miller II involves Miller's claims that Windsor and State & County wrongfully delayed and evaded paying the per occurrence policy limit, which was a specific issue determined in the Windsor suit. The fact that the Windsor suit was a declaratory judgment action does not make it any less sufficient for purposes of fixing venue. *See Hagemeister*, 503 S.W.2d at 880–81.

Accordingly, we hold that the final venue determination in the Windsor suit collaterally estops any contrary venue determination in Miller II. The 28th District Court was, thus, correct to transfer venue from Nueces County to Tarrant County. We overrule issues one through four.[3]

## SUMMARY JUDGMENT

Miller raises 19 issues complaining about the trial court's summary judgment in favor of State & County, Windsor, Curtiss, and Ledbetter.[4] The trial court granted summary judgment in favor of State & County, Windsor, Curtiss, and Ledbetter based on res judicata.

We review the summary judgment granted in this case under the familiar standard: (1) the movants for summary judgment have the burden of showing that there is no issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

The general doctrine of res judicata concerns the conclusive effect given final judgments. *See Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 679 (Tex.1982). Within this general doctrine are two categories: (1) claim preclusion or res judicata and (2) issue preclusion or collateral estoppel. *See Barr*, 837 S.W.2d at 628.

■ Under res judicata, a claim is precluded "if it arises out of the same subject matter of a previous suit and which

3. We need not address Miller's arguments regarding article 5.06–1(8) because applying collateral estoppel does not involve an examination of mandatory or permissive venue provisions; it simply estopped Miller from asserting venue in Nueces County in Miller II.

4. Once again, Miller addresses only seven distinct complaints in his argument. Thus, we will consider only those complaints argued. *See* Tex.R.App. P. 38.1(e), (h); *Windsor*, 923 S.W.2d at 93.

through the exercise of diligence, could have been litigated in a prior suit." *Id.* at 631. This doctrine effectively prevents a plaintiff from dividing his cause of action and later asserting claims that could have been litigated in the first suit. *See Duran v. Resdoor Co.*, 977 S.W.2d 690, 692 (Tex. App.—Fort Worth 1998, pet. denied). Thus, a judgment "is not only final as to the matters actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have had decided." *Freeman v. McAninch*, 87 Tex. 132, 27 S.W. 97, 99 (1894). In other words, if a party seeks to relitigate a matter that was within the subject matter of the earlier litigation, res judicata bars the suit even if the causes of action alleged in the second suit are not identical to those asserted in the first. *See Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 653 (Tex.1996). To determine whether a prior and later lawsuit arise out of the same subject matter, we must analyze the factual matters that make up the "gist" of the claims in the prior litigation without regard to the form of the action. *Barr*, 837 S.W.2d at 630.

In Miller I, the Thirteenth Court of Appeals held that the 214th District Court incorrectly found that Miller's claims in Miller I were barred by res judicata or collateral estoppel based on the Windsor suit. *State & County*, 988 S.W.2d at 331. We asked the parties to file supplemental briefs addressing whether this court is bound by the Thirteenth Court of Appeals' holding and, thus, constrained to hold that Miller's claims in Miller II are likewise not barred by res judicata or collateral estoppel based on the Windsor suit. All parties responded and asserted that we are not bound by the *State & County* decision.

The Thirteenth Court of Appeals' decision in Miller I only dealt with res judicata and collateral estoppel as they affected Miller's claims against State & County; it did not address Windsor for the simple reason that Windsor was not a party to Miller I. Thus, Windsor's arguments were not addressed by that court.

■ It seems clear that Miller's claims against Windsor in Miller II are barred by res judicata. The underlying facts giving rise to both the Windsor suit and Miller II are centered upon the issue of coverage. The Windsor suit sought a declaration of the scope of coverage arising out of the 1992 car accident. The claims in Miller II derive from Windsor's and State & County's alleged misconduct in delaying payment and determining the extent of coverage. In fact, one of the "causes of action" Miller raises in Miller II against Windsor is Windsor's filing of the Windsor suit. In Miller II, Miller is, in effect, arguing that Windsor delayed payment and evaded interest, which was a specific issue determined in the Windsor suit. The Windsor suit specifically decided the issue of what coverage amount Miller was due; thus, Miller's claims of delayed payment of coverage, which it was determined he was not entitled to, cannot be considered a separate and distinct subject matter so as to evade the application of res judicata. We find it especially illustrative to directly compare, as State & County did in its motion for summary judgment, Miller's allegations he raised in the Windsor suit with his allegations in Miller II:

| WINDSOR SUIT | MILLER II |
|---|---|
| [Windsor] is a putative plaintiff and has improperly and fraudulently joined [State & County] as a putative defendant for the wrongful purposes of (a) attempting to create jurisdiction to decide an illusory lawsuit alleging improperly an interpleader and declaratory judgment action when no claim in controversy exists . . . . [Windsor] is not the insurance company that is named as the insuring company in any automobile insurance policy which names [Miller] as the named insured . . . . | [Windsor], as a putative plaintiff, improperly and fraudulently joined [State & County] as a putative defendant in [the Windsor suit] because [State & County] does not have any right to make and has not made any claim against [Windsor] [under] the Auto Policy. . . . [Windsor] is not a party to the Auto Policy and does not have rights and duties expressed by the Auto Policy. . . . Miller and his family do not have any right to make and have not made any claim against [Windsor] [under] the Auto Policy. Therefore, [Windsor's] . . . interpleader and petition for declaratory judgment action is illusory and a legal fiction for the wrongful purposes of interfering with and taking away [Miller's] rights pursuant to the Auto Policy. |

In fact, Miller readily admitted that he was attempting to relitigate the same subject matter by asserting that his claims in Miller II "arose and have been continuing to arise out of the same occurrences or transactions and series of occurrences or transactions adversely affecting and interfering with his rights in Nueces County, Texas, during the time period from September 24, 1993 [when Windsor filed the Windsor suit] through the present." Thus, Miller's claims in Miller II have the same factual basis as the claims raised in the Windsor suit. Such claims were accordingly required to be asserted as compulsory counterclaims. *See* TEX.R. CIV. P. 97(a); *Getty Oil Co.*, 845 S.W.2d at 800. Miller is barred by res judicata from relitigating this same subject matter in Miller II. *See, e.g., Soto v. Phillips*, 836 S.W.2d 266, 268 n. 1 (Tex.App.—San Antonio 1992, writ

denied) (holding first lawsuit and allegations in second lawsuit part of same transaction for res judicata purposes even though different theory of recovery and harm alleged in second lawsuit). The trial court correctly granted Windsor a summary judgment based on res judicata.

Regarding State & County,[5] the Thirteenth Court of Appeals held that because Miller's causes of action against State & County in the Windsor suit were permissive cross-claims and not compulsory counterclaims, his failure to assert them in the Windsor suit did not prevent him from asserting them in Miller I under the doctrines of res judicata or collateral estoppel. *State & County*, 988 S.W.2d at 331. They reached this result by focusing on the fact that Miller and State & County were both defendants in the Windsor suit

5. Our discussion on this issue will also include Curtiss and Ledbetter. As officers of State & County, any holding we would make regarding State & County would apply equally to them.

and not adverse parties. *Id.* at 330. This is generally true; but, where the rights between respective parties were properly put in issue and adjudicated, the prior judgment will be conclusive as to those co-parties. *See Smith v. Baker,* 380 S.W.2d 725, 726 (Tex.Civ.App.—Waco), *writ ref'd n.r.e.,* 383 S.W.2d 570 (Tex.1964). Thus, if issues were "drawn between" the co-parties, res judicata will apply. *Getty Oil,* 845 S.W.2d at 800.

■ In this case, issues were drawn between State & County and Miller in the Windsor suit. In his motion to transfer venue, Miller sought to have State & County realigned as a plaintiff with Windsor because "no controversy exists" between State & County and Windsor. He further asserted that State & County "is not liable in the capacity in which it is sued in this lawsuit." In his motion to dismiss the Windsor suit, Miller argued that State & County was colluding with Windsor to deprive Miller of his rights. Indeed, in the appeal from the Windsor suit, Miller made it clear that he viewed Windsor and State & County as being his opponents. *Windsor,* 923 S.W.2d at 95. Although we held that Windsor's and State & County's interests were distinct enough to not warrant a realignment of the parties, this does not mean that State & County and Miller as co-parties did not have issues drawn between them for the purposes of res judicata. *Id.*Further, because State & County was in privity with Windsor,[6] the judgment in the Windsor suit, which bars Miller's claims against Windsor, would seem to also bar Miller's claims against State & County. *See Barr,* 837 S.W.2d at 630.

■ Because we are constrained to find that the *State & County* decision was clearly erroneous, we agree with the parties and hold that we are not bound by the law-of-the-case doctrine. *See Connecticut Gen. Life Ins. v. Bryson,* 148 Tex. 86, 219 S.W.2d 799, 800 (1949). Accordingly, Mil-

ler's claims against State & County in Miller II are barred by res judicata. The trial court correctly granted State & County a summary judgment based on res judicata.

## LIMITATION ON DISCOVERY AND SANCTIONS

■ Miller next argues that the trial court abused its discretion by precluding all discovery. As discussed above, this suit was initially filed in the 28th District Court of Nueces County, where it was abated pending the outcome of the Windsor suit. The trial court also granted Windsor's and State & County's motions to quash and motions for protective order directed at Miller's propounded discovery. When the Windsor suit was concluded, Miller sought to lift the abatement and conduct additional discovery. Although the trial court lifted the abatement, it did so for the limited purpose of considering Windsor's and State and County's motions to transfer venue, for summary judgment, and for sanctions. The court expressly ordered Miller "not [to] engage in any further discovery until further order of this Court."

We review a trial court's discovery rulings under an abuse-of-discretion standard. *See General Tire, Inc. v. Kepple,* 970 S.W.2d 520, 526 (Tex.1998); *Masinga v. Whittington,* 792 S.W.2d 940, 940–41 (Tex.1990) (orig.proceeding). The discovery rules specifically grant a court broad discretion in limiting discovery in the interests of justice. *See* TEX.R. CIV. P. 166b.5 (repealed 1998) (current version at TEX.R. CIV. P. 192.6(b)). In fact, "courts may limit discovery pending resolution of threshold issues like venue." *In re Alford Chevrolet–Geo,* 997 S.W.2d 173, 181 (1999) (orig.proceeding).

---

**6.** Windsor's status as State & County's reinsurer has been recognized by this court and the Thirteenth Court of Appeals. *State &* *County,* 988 S.W.2d at 329; *Windsor,* 923 S.W.2d at 96.

The record in this case shows over 1000 pages of discovery sought from State & County, Curtiss, Ledbetter, and Windsor. This equates to about half of the pages in the 16–volume clerk's record in this appeal. Regarding State & County, Curtiss, and Ledbetter, Miller sought 173 requests for production, 243 requests for admission, and 63 interrogatories. Miller asked for 60 requests for production, 21 interrogatories, and 81 requests for admission from Windsor. When Miller filed these discovery documents, he had already conducted extensive discovery in the Windsor suit on these same issues and venue challenges had already been filed in Miller II. On this record, we cannot say the trial court abused its discretion.

■ In his final four issues, Miller challenges the trial court's sanctions order:[7]

The Court makes the following findings:

1. All of [Miller's] claims are barred by res judicata.

2. [Miller] and his counsel have engaged in a pattern of filing groundless and duplicative suits in an attempt to relitigate claims and issues, and circumvent rulings, that were decided adversely to [Miller] in [the Windsor suit] and [Miller I]. The Court finds that such pattern was for the purposes of harassment or in bad faith.

3. [Miller] and his counsel have engaged in a pattern of filing groundless, duplicative, and burdensome discovery requests, and moved to compel responses thereto, in direct violation of this Court's Order abating all discovery.

4. [Miller] and his counsel have abused the judicial process by filing voluminous and duplicative pleadings, which raise the same claims and issues that were decided adversely to [Miller] in [the Windsor suit] and [Miller I].

The Court finds that such conduct justifies imposition of substantial sanctions against [Miller] and his counsel. The Court has considered the possibility of lesser sanctions, but is of the opinion that lesser sanctions would not deter further misconduct by [Miller] and his counsel, and would not adequately punish [Miller] and his counsel for the severe misconduct in which they have engaged. The Court has also considered the possibility of greater sanctions, but finds that the sanctions imposed below are just.

In light of the misconduct of [Miller] and his counsel, the Court enters the sanctions described below. These sanctions are entered pursuant to Texas Rules of Civil Procedure 13 and 215, Texas Government Code Chapters 9 and 10, and section 17.50 of the Texas Deceptive Trade Practices Act. The Court further finds that any one of the findings listed above would, standing alone, justify the imposition of the sanctions described below.

. . . .

ORDERED, ADJUDGED AND DECREED that the Motions for Sanctions of [State & County, Ledbetter, Curtiss, and Windsor] are hereby GRANTED, that Plaintiff and his counsel, Gary Norton, are to pay Defendants jointly the amount of thirty thousand dollars ($30,000.00) as sanctions.

We review the court's sanctions order under an abuse-of-discretion standard. *See Tarrant County v. Chancey,* 942 S.W.2d 151, 154 (Tex.App.—Fort Worth 1997, no writ). We may reverse a trial court for abusing its discretion if its decision was arbitrary or unreasonable, i.e., the ruling was based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See id.* To make this determination, we review the "particu-

---

7. Although Miller raises four issues related to the sanctions order, his argument only addresses one distinct sanction complaint.

Thus, we will consider only the complaint argued. *See* Tex.R.App. P. 38.1(e), (h); *Windsor,* 923 S.W.2d at 93.

lars" of good cause set out in the sanctions order.[8] TEX.R. CIV. P. 13.

The purpose of rule 13 is to "check abuses in the pleading process." *Home Owners Funding Corp. v. Scheppler,* 815 S.W.2d 884, 889 (Tex.App.—Corpus Christi 1991, no writ). As set forth above, this is the third lawsuit dealing with the identical facts and subject matter. Despite Miller's protestations to the contrary, this suit is attempting to relitigate the same issues that have already been decided adversely to him. Further, the voluminous and repetitive discovery requests are additional acts that support the trial court's sanctions order. *See Ambrose v. Mack,* 800 S.W.2d 380, 383–84 (Tex.App.—Corpus Christi 1990, writ denied). We cannot hold that the trial court abused its discretion.

### CONCLUSION

Based on collateral estoppel, we hold that venue was fixed in Tarrant County. Miller's claims in Miller II are barred by res judicata. Further, the trial court did not abuse its discretion in abating discovery and imposing sanctions. Accordingly, we overrule Miller's issues and affirm the trial court's judgment.

---

**8.** We do not agree with Miller's assertion that the trial court's order does not set forth the particulars of the good cause justifying the sanctions. The order, along with the court's findings of fact and conclusions of law, clearly specifies the particular acts upon which the sanctions order was based. *Cf. Chancey,* 942 S.W.2d at 155 (holding sanctions order was too general to support award).