**BEVERLY ENTERPRISES OF TEXAS, INC., et al., Appellants,**

v.

**Gwen LEATH, Appellee.**

**No. 10–91–048–CV.**

Court of Appeals of Texas, Waco.

April 22, 1992.

Rehearing Denied May 20, 1992.

Joseph H. Spence, H. David Flowers, and Constance M. Maher, Gandy, Michener, Swindle, Whitaker & Pratt, Fort Worth, for appellants.

William T. Catterton and Leland A. Reinhard, Catterton and Reinhard, Fort Worth, Dan M. Boulware, Cleburne, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Gwen Leath was employed by Beverly Enterprises of Texas, Inc. as a food-service employee at its Red River Haven Nursing Home in Bogota, Texas. She fell in a hallway at the nursing home and hit her head on a wall railing. Because Beverly carried no workers' compensation insurance, Leath sued for ordinary negligence and, claiming that Beverly was also grossly negligent, for punitive damages. A jury found that Beverly's failure to furnish Leath a reasonably safe place to work proximately caused the injuries and awarded her $158,366.16. It also awarded her $500,000 in punitive damages.

Beverly asserts that the court lacked jurisdiction because Leath's claims were preempted by a federal statute. It also contends that no evidence, or insufficient evidence, supports the findings of future-medical expenses and gross negligence, that the court erred in failing to bifurcate the trial and in admitting evidence of its net worth, and that the punitive damages are excessive under section 41.007 of the Civil Practice and Remedies Code. We will overrule all points and affirm the judgment.

## PREEMPTION

■ Beverly contends in point one that Leath's action in state court is preempted by the Employee Retirement Income Security Act (ERISA). *See* 29 U.S.C.A. § 1144(a) (West 1985). Actions which do not "relate to" any employee-benefit plan are not preempted. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. ——, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990). Since 1917 when the legislature adopted the workers' compensation law, an injured employee has had no right to bring a common-law negligence action against the employer unless the employer elected not to carry compensation insurance. TEX.REV.CIV.STAT.ANN.

art. 8308–3.03, 8308–3.04 (Vernon Pamphlet 1992), Act of March 28, 1917, 35th Leg. R.S., Ch. 103, §§ 1, 4, 1917 Tex.Gen.Laws 269. When the employer so elected, however, the law has always expressly authorized a negligence suit and has enhanced the right by precluding certain defenses. *Id.* Here, Leath has exercised her common-law rights; thus, we conclude that the rights she asserted did not "relate to" any ERISA plan. *See Ingersoll–Rand,* 498 U.S. at ——, 111 S.Ct. at 482–83. We overrule point one.

## NO–EVIDENCE AND INSUFFICIENT–EVIDENCE STANDARDS OF REVIEW

■ In reviewing a "no-evidence" point, we must consider only the evidence and inferences tending to support the verdict and disregard all evidence and inferences to the contrary. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). If there is any evidence of probative force to support a finding, that finding is binding on an appellate court. *Behring Intern. v. Greater Houston Bank,* 662 S.W.2d 642, 648 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). When the complaining party challenges the *legal* sufficiency of the evidence on a finding that favors the party who had the burden of proof, the reviewing court must sustain the finding if, considering only that evidence and the inferences which support the finding in the light most favorable to the finding and disregarding evidence and inferences to the contrary, any probative evidence supports it. *See Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981); *Miller v. Riata Cadillac Company,* 517 S.W.2d 773, 777 (Tex.1974).

■ When the complaining party challenges the *factual* sufficiency of the evidence on a finding that favors the party who had the burden of proof, the reviewing court must sustain the finding unless all the evidence, both for and against the finding, is so weak or insufficient that the finding is manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

## GROSS NEGLIGENCE AND THE AWARD OF PUNITIVE DAMAGES

In point two, Beverly asserts that no evidence exists to support either the jury's finding of gross negligence or the award of punitive damages. In point three, it asserts that the evidence was insufficient to support the finding and award.

■ We overlay our statement of the standard of review of the no-evidence point with the recognition that a finding of gross negligence should be sustained if there is "some evidence of probative value" that the conduct complained of was reckless, wanton, and grossly negligent conduct. *International Armament Corp. v. King,* 686 S.W.2d 595, 597 (Tex.1985); *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 922 (Tex.1981). Ordinary negligence is elevated into gross negligence by the mental state of the party whose conduct is questioned. *Id.* Thus, we must determine if the record contains some evidence of probative value that Beverly was consciously indifferent to Leath's rights, welfare, and safety. *See id.* Beverly's mental state may be inferred from actions—Leath need not prove its subjective state of mind by direct evidence. *See Williams v. Steves Industries, Inc.,* 699 S.W.2d 570, 573 (Tex. 1985). We test conscious indifference by Beverly's conduct: Did its acts and the surrounding circumstances demonstrate that it knew about the peril and did not care? *See id.; International Armament,* 686 S.W.2d at 597.

■ The relevant evidence is derived from the testimony of Leath, Sharon Adams (a charge nurse), and Naomi Smith (the dietary-services manager for the nursing home). These witnesses said that a dishwasher in the spray room leaked, that a pipe under a sink also leaked, that water had continually accumulated in the spray room when the dishes were washed, and that the water ran into the adjoining hall. Leath testified that on November 11, 1988, she slipped and fell in a hallway that led from the kitchen spray area to the patients' dining room. Beverly's routine required that Leath carry silverware from the spray

room and down the hallway to the dining room before the hallway was mopped. Adams said water accumulated in the hallway every day. Smith said that water accumulated three times a day and that the dishwasher had leaked so long that the tiles under it were warped. Leath said that she told Smith, her supervisor, about the leaks. Smith and Adams said that management of the nursing home had been notified about the condition of the dishwasher and leaky pipe before Leath's fall. Smith said that mats were placed in the kitchen to prevent falls, but none were placed in the hallway where Leath fell because they cost between $200 and $400.

We find that this testimony constitutes some evidence of probative value on which the jury could have based both its finding that Beverly was grossly negligent and its award of punitive damages. Beverly knew that water accumulated on the floor, knew the source of the water, and knew how often and how long it stayed on the floor. The jury could have reasonably concluded that Beverly's acts and the surrounding circumstances demonstrated conscious indifference to Leath's rights, welfare, and safety.

■ Section 41.001(5) of the Civil Practice and Remedies Code states:

'Gross negligence' means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected.

TEX.CIV.PRAC. & REM.CODE ANN. § 41.001(5) (Vernon Supp.1992). The court used this definition in its charge to the jury. Beverly argues that the 1987 adoption of section 41.001(5), including the words "establish" and "actual," established a new evidentiary standard "by which courts are to review gross negligence findings." *Id.* Although it cites *Terry v. Garcia* in support of its position, its reliance is misplaced. *See Terry v. Garcia,* 800 S.W.2d 854, 856 (Tex. App.—San Antonio 1990, writ denied). We believe that the standard adopted by the

Supreme Court prior to the enactment of section 41.001 is the correct standard. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 41.001(5) (Vernon Supp.1992); *Burk Royalty,* 616 S.W.2d at 922.

■ We must sustain the findings of gross negligence and the award of punitive damages unless all the evidence, both for and against the findings, is so weak or insufficient that the findings are manifestly unjust. *See Cain,* 709 S.W.2d at 176. Based on the evidence described above, we do not believe that the findings are manifestly unjust. *See id.*

We overrule points two and three.

## FUTURE MEDICAL EXPENSES

■ The jury awarded Leath $10,000 for future medical expenses. In points nine and ten, Beverly contends that no evidence, or insufficient evidence, supports this award. It says, first, that the record contains no evidence that Leath will, in reasonable probability, require medical treatment or incur medical expenses in the future, and second, that the overwhelming weight of the evidence established that she had "received the medical treatment necessary to correct the injury and that [she] was much better."

■ An award of future medical expenses is primarily a matter for the jury. *Hughett v. Dwyre,* 624 S.W.2d 401, 405 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.). No precise evidence is required. *Id.* Such an award may be based on the nature of the injuries, the medical care rendered in the past, and the condition of the injured party at the time of trial. *Id.* Testimony of a "reasonable medical probability" by a medical expert is not a prerequisite to a recovery for future medical expenses. *Id.* If there is any probative evidence which supports the finding of future medical expenses, then the award must be upheld. *Id.* at 406.

Leath, aged 56, testified that after the fall she saw Dr. E.E. Brooks, who made x-rays and gave her pain medication. She saw him once a week for three months, during which she had pain in her left shoul-

der, neck, arm, and hand. After three months, Dr. Brooks referred her to Dr. Jack Elder, an orthopedic surgeon in Longview. Dr. Elder ran a magnetic resonance imaging test and referred her to Dr. Benjamin Guerra. In December 1988 Dr. Guerra ran a myelogram and computer-assisted x-rays and told her she had four ruptured disks. He performed surgery in January, and her pain subsided. The pain later increased to the pre-surgery level. Dr. Guerra continued to prescribe medication, but in August 1989, he referred her to Dr. John White, who used "trigger-point injections" six or seven times to relieve her pain. Dr. White also hospitalized her for "catheter surgery" twice. He then referred her back to Dr. Guerra, who performed additional surgery in April 1990. Dr. Guerra said that he continued her anti-inflammatory and pain medications after the April surgery. Leath testified that the second surgery "did not return [her] to normal health," that she had not returned to work as of the trial, and that she still had shoulder, neck, and arm pain. J.C. Leath, her husband, testified that she was better after the second surgery, but was still restricted from raising her arms over her head and from lifting anything heavy. He said that she had the most difficulty sweeping and mopping and that she had to give up gardening.

We hold that this testimony constitutes legally and factually sufficient evidence to support the award of future medical expenses. *See id.* at 405. We overrule points nine and ten.

## BIFURCATED TRIAL AND EVIDENCE OF NET WORTH

 Beverly's point eight asserts that the court erred by failing to grant its request for a bifurcated trial and in admitting evidence of its net worth before the jury had found it guilty of gross negligence. Beverly concedes that Texas has not adopted the "Wyoming Plan"—which mandates a separate hearing on the amount of punitive damages when prima facie evidence justifying punitive damages is produced at trial and the jury determines that it intends to award such damages—

but urges us to adopt it now. We decline. In the alternative, Beverly asserts that issues related to gross negligence and punitive damages are proper subjects of a separate trial under Rule 174(b) and that the court abused its discretion in refusing to grant a separate trial. *See* TEX.R.CIV.P. 174(b).

 Abuse of discretion is determined by whether the court acted without reference to any guiding principles. *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). Stated another way: Was the act of the court arbitrary or unreasonable? *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984); *Landry v. Travelers Insurance Company*, 458 S.W.2d 649, 651 (Tex.1970). The mere fact that an appellate court might have decided a matter within the trial judge's discretion in a different manner does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Telephone Company v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965); *Jones v. Strayhorn*, 159 Tex. 421, 321 S.W.2d 290, 295 (1959).

Rule 174 authorizes, but does not require, a court to grant a separate trial on any claim or separate issue to "further convenience" or "avoid prejudice." TEX. R.CIV.P. 174(b); *Miller v. O'Neill*, 775 S.W.2d 56, 59 (Tex.App.—Houston [1st Dist.] 1989, no writ). Unless the Wyoming or a similar plan is mandated, courts will continue to determine on a case-by-case basis whether to grant a separate hearing on the amount of punitive damages which are to be awarded. *See Miller*, 775 S.W.2d at 59. Based on the record, we cannot say that the court abused its discretion in refusing to grant Beverly's request for a separate trial. *See Johnson v. State Farm Mutual Auto Insurance*, 762 S.W.2d 267, 269 (Tex.App.—San Antonio 1988, writ denied). We overrule point eight.

## EXCESSIVE PUNITIVE DAMAGES

 The jury awarded Leath $500,000 in punitive damages. Although the damages for past and future medical care, loss of earnings, physical pain and mental an-

guish, and physical impairment awarded by the jury totalled $158,366.16, the judgment awarded only $100,927.70 for those damages because Leath had agreed that Beverly was entitled to an offset for amounts paid to her or on her behalf before trial. In points four and five, Beverly asserts that the punitive damages are excessive and that a remittitur should be ordered. Specifically, it says that section 41.007 of the Civil Practice and Remedies Code limits the amount of punitive damages to four times the amount of the "actual damages" and that the court awarded "actual damages" of $100,927.70. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 41.007 (Vernon Supp. 1992). Leath counters that a limitation of damages is an affirmative defense that Beverly did not plead and, thus, waived.

We believe that the term "actual damages" used in section 41.007 refers to the total amount of damages found by the jury. *See id.* Pretrial payments do not reduce the amount of "actual damages" suffered by an injured party; they simply reduce the amount of damages which are recoverable by that party after a trial. We do not believe that the legislature intended that payments or lack of payments before trial should enhance or reduce a claimant's right to punitive damages under the statute. Because the jury's award of $500,000 in punitive damages did not exceed four times its award of actual damages, the court's judgment did not violate the terms of section 41.007. *See id.* We do not reach the question of whether the limitation imposed by section 41.007 is an affirmative defense which must be pleaded.

■ Beverly also contends that the award of $500,000 in punitive damages is excessive and the result of passion and prejudice. The amount of an award of punitive damages rests largely in the discretion of the jury. *Miles Homes Div., Insilco Corp. v. Smith*, 790 S.W.2d 382, 385 (Tex.App.—Beaumont 1990, writ denied). We have held that whether an award of punitive damages is excessive is reviewed by considering: (1) the nature of the wrong, (2) the character of the offending conduct, (3) the degree of culpability of the person against whom the damages were awarded, (4) the relative situation and sensibilities of the parties, and (5) the extent to which the conduct offends a public sense of justice and propriety. *See John Deere Co. v. May*, 773 S.W.2d 369, 377–78 (Tex.App.—Waco 1989, writ denied). Because evidence of net worth is admissible for the jury's consideration, we add: (6) the net worth of the defendant. *See Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex.1988).

Punitive damages are not necessarily multiples of actual damages. *Miles Homes*, 790 S.W.2d at 385. Here, the punitive-damages award is within the amount authorized by the statute, and the ratio is not so great as to render it excessive in light of the facts of the case. *See id.;* TEX.CIV.PRAC. & REM.CODE ANN. § 41.007 (Vernon Supp.1992). We overrule points four and five.

We affirm the judgment.