COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS




DOROTHY GILCREASE,
INDIVIDUALLY, AND AS
REPRESENTATIVE OF THE ESTATE
OF FRED GILCREASE, DECEASED,
JASON GILCREASE, AND MISSY
(TWYLA) HYMAN/GARLOCK, INC.,

                     Appellants/Cross-Appellees,

v.

GARLOCK, INC.,/DOROTHY
GILCREASE, INDIVIDUALLY, AND AS
REPRESENTATIVE OF THE ESTATE
OF FRED GILCREASE, DECEASED,
JASON GILCREASE, AND MISSY
(TWYLA) HYMAN,

                     Appellee/Cross-Appellant.

§
 
§
 
§
 
§
 
§
 
 § 

 §

 §

 §

 §

 


No. 08-04-00367-CV

Appeal from the

327th District Court 

of El Paso County, Texas 

(TC# 2001-3623) 




O P I N I O N

            Dorothy Gilcrease, individually and as representative of the estate of Fred Gilcrease, Jason
Gilcrease, and Missy (Twyla) Hyman (Appellants), appeal from a take-nothing judgment entered in
favor of Garlock, Inc. following a jury trial. The take-nothing judgment followed the trial court’s
determination that Garlock was entitled to receive settlement credits of $4,572,354 against the actual
and exemplary damages of $3,547,798.26 awarded by the jury. We reverse and remand.
FACTUAL SUMMARY
            Sixty-two-year-old Fred Gilcrease had worked as a union pipefitter and plumber since 1957,
or “all of [his] working life.” During this time, he was exposed to many asbestos products. As a
pipefitter, he worked mainly with gaskets, including Garlock gaskets which contained asbestos. In
the course of his work, Mr. Gilcrease removed and replaced Garlock gaskets, many times using a
wire brush, scraper, sander, or grinder to do so. This process created a dusty environment to which
Mr. Gilcrease was exposed on a regular basis. In March 1999, Mr. Gilcrease was diagnosed with
mesothelioma as a result of his exposure to asbestos.
            In 1999, Mr. and Mrs. Gilcrease filed a suit in Bexar County against multiple defendants for
damages arising from Mr. Gilcrease’s exposure to asbestos and resulting mesothelioma. While the
suit was pending in Bexar County, a majority of the defendants settled. After Mr. Gilcrease died on
November 21, 2000, the pleadings were amended to add the Gilcreases’ adult children – Jason
Gilcrease and Twyla Hyman – as plaintiffs. Jason and Twyla signed heirship agreements which
entitled each to 10 percent of the proceeds of the wrongful death lawsuit.
            On September 25, 2001, Appellants non-suited their claim against Garlock in Bexar County. 
The following day, Appellants filed an original petition asserting identical claims against Garlock,
A.P. Green Industries, Inc., Dresser Industries, Inc., Federal-Mogul Corporation, Guard-Line, Inc.,
Harbison-Walker Refractories Company, and T&N, Ltd. Garlock sought to have venue returned to
Bexar County, but the trial court denied the motion. Appellants’ first amended petition named only
Dresser Industries, Garlock, and Guard-Line as defendants. The trial court directed a verdict in favor
of Guard-Line. Appellants settled with Dresser Industries for $350,000.



            Apportioning Garlock’s responsibility for the decedent’s injury at 25 percent, the jury
awarded the following damages:
(1) for Mr. Gilcrease: $1.5 million for physical pain and mental anguish, $50,000
for disfigurement, and $50,798.26 for medical care expense;
 
(2) for Mrs. Gilcrease: $10,000 for past pecuniary loss, $20,000 for future pecuniary
loss, $20,000 for loss of companionship and society in the past, $50,000 for loss of
companionship and society in the future, $15,000 for mental anguish in the past and
$5,000 for mental anguish in the future;
 
(3) for Twyla Hyman: $10,000 for pecuniary loss in the past, $12,000 for pecuniary
loss in the future, $10,000 for loss of companionship and society in the past, $10,000
for loss of companionship and society in the future, and $10,000 for mental anguish
in the past; and
 
(4) for Jason Gilcrease: $100,000 for pecuniary loss sustained in the past, $150,000
for pecuniary loss sustained in the future, $100,000 for loss of companionship and
society in the past, $150,000 for loss of companionship and society in the future,
$150,000 for mental anguish in the past, and $125,000 for mental anguish in the
future.

The jury awarded $2,547,798.26 for compensatory damages and $1,000,000 in exemplary damages. 
The total damages were apportioned between Appellants as follows: 50 percent to Mrs. Gilcrease,
30 percent to Jason, and 20 percent to Twyla.
            Appellants’ motion for entry of judgment included a list of settlements in the total amount
of $2,407,179. This included a $200,000 settlement from the Manville Trust of which only $20,000
had been paid. The Manville Trust had executed a note for the remaining $180,000, but Appellants
contended this was a contingent payment which more than likely would never be paid. The list also
contained settlements with three defendants that had declared bankruptcy: A.P. Green Industries
($750,000); Owens-Corning Fiberglas ($300,000); and Fibreboard ($900,000).


 Appellants argued 
that these settlements were void and should not count as credits because they had not been paid. 
Following a hearing, the trial court entered the following findings:
(1) Garlock is entitled to a settlement credit in the amount of $4,572,354;
 
(2) Mr. Gilcrease and his family are one claimant as the term is used in applying
credit against judgment for settlement amounts previously paid; and
 
(3) settlement credits are not limited to actual or compensatory damages and Garlock
is entitled to an offset for punitive damages.

The trial court entered a take-nothing judgment because the settlement credits exceeded the damages
awarded by the jury. Appellants timely filed their notice of appeal and Garlock filed a notice of
conditional cross-appeal.
SETTLEMENT CREDIT
            Appellants raise three issues challenging the settlement credits. In Issue One, they argue that
the trial court erred in crediting settlement amounts from bankrupt settling parties because the
agreements are contingent. In Issue Two, Jason and Twyla complain that settlement agreements
entered into before they joined the suit should not be credited against their recoveries. And in Issue
Three, Appellants contend that the settlement credits should not have been applied to exemplary
damages.
            Application of the settlement credit is governed by Chapter 33 of the Civil Practice and
Remedies Code. See Tex.Civ.Prac.& Rem.Code Ann. §33.002(a) (Vernon Supp. 2006); Drilex
Systems, Inc. v. Flores, 1 S.W.3d 112, 121 (Tex. 1999). The relevant version of Section 33.012
required the trial court to reduce the judgment according to one of two methods elected by the
defendant: a dollar-for-dollar credit or a sliding scale. Acts 1995, 74th Leg., R.S., ch. 136, §1, 1995
Tex.Gen.Laws 971, 974 [current version found at Tex.Civ.Prac.& Rem.Code Ann. §33.012
(Vernon Supp. 2006)].


 Garlock elected the dollar-for-dollar credit in Section 33.012(b)(1):
If the claimant has settled with one or more persons, the court shall further reduce the
amount of damages to be recovered by the claimant with respect to a cause of action
by a credit equal to . . .
 
(1) the sum of the dollar amounts of all settlements. . . .

            Section 33.011(1) defines “claimant” as a person seeking recovery of damages pursuant to
the provisions of Section 33.001. Acts 1995, 74th Leg., R.S., ch. 136, §1, 1995 Tex.Gen.Laws 971,
973 [current version found at Tex.Civ.Prac.& Rem.Code Ann. §33.011(1) (Vernon Supp. 2006)]. 
In an action in which a party seeks recovery of damages for injury to another person, damage to the
property of another person, death of another person, or other harm to another person, “claimant”
includes both that other person and the party seeking recovery of damages pursuant to the provisions
of Section 33.001. Id. A “settling person” is defined as a person who at the time of submission has
paid or promised to pay money or anything of monetary value to a claimant at any time in
consideration of potential liability pursuant to the provisions of Section 33.001 with respect to the
personal injury, property damage, death, or other harm for which recovery of damages is sought. 
Acts 1995, 74th Leg., R.S., ch. 136, §1, 1995 Tex.Gen.Laws 971, 973 [current version found at
Tex.Civ.Prac.& Rem.Code Ann. §33.011(5) (Vernon Supp. 2006)].
BANKRUPT SETTLING PARTIES
            Citing McNair v. Owens-Corning Fiberglas Corporation


 and Cimino v. Raymark Industries,
Inc.,


 Appellants argue that Garlock should not have been credited for the settlement amounts of
Manville Trust, A.P. Green Industries, Owens-Corning Fiberglas and Fibreboard, a total of
$2,130,000, because the settlements were contingent. Disallowing these settlement amounts would
reduce the total settlement credit to $2,442,354 and result in a judgment in favor of Appellants in
the amount of $1,105,444.26. Garlock responds that the settlement agreements with A.P. Green
Industries, Owens-Corning Fiberglas and Fibreboard were not contingent and the trial court properly
credited these amounts. Garlock concedes that the $180,000 portion of the settlement with Johns-Manville was expressly made contingent upon the realization of payments from the Manville Trust
and is “probably not allowable as a §33.012(b)(1) settlement credit.”
            We turn to Garlock’s authorities. McNair is also an asbestos exposure case. The McNairs
settled with ten of twelve defendants before trial. They entered into cash settlements with most of
the settling defendants, but they also received notes from two other defendants. Payment of both
notes was expressly made contingent on the outcome of litigation between the two defendants and
their insurance carriers. The jury returned a verdict for the McNairs and the trial court credited the
non-settling defendants with the cash settlements, but the court refused to reduce the non-settling
defendants’ liability by the amount of the notes. Instead, the trial court assigned the notes to the two
non-settling defendants. On appeal, the non-settling defendants argued that the trial court should
have reduced the recovery by the amount of the two notes. The Fifth Circuit affirmed, holding that
at the time judgment was entered, the McNairs were not entitled to the cash value of the settlements
because payment was contingent on the outcome of the litigation between the defendants and their
insurers. McNair, 890 F.2d at 756. If the litigation resulted in no additional monies being due, then
the total settlement remained at the original amount. Id. If the litigation resulted in additional
payments being due under either settlement agreement, the total settlement amount would increase
and the defendants would have paid more than what was due under Section 33.012. Id. But the
defendants would be made whole when the amounts due under the notes were paid directly to the
liable defendants.
            In Cimino, the plaintiffs reached a non-cash settlement agreement with an insolvent
defendant, Johns-Manville Corporation. The defendant promised to pay the plaintiffs a specified
sum of money out of the Johns-Manville Trust Fund over a period of years with the first payment
not due until 1991. The Fifth Circuit, which likened the settlement agreement to a promissory note,
found that payment was contingent on the outcome of the bankruptcy proceedings and on the
continued financial viability of the Johns-Manville Trust Fund which had reached a critical
condition. Cimino, 751 F.Supp. at 656-57.
            The instant case is factually distinguishable from both McNair and Cimino. In McNair, the
settlement agreement was expressly made contingent on the outcome of the litigation between the
defendants and their insurers. In Cimino, the bankrupt defendant agreed to pay the settlement over
time out of a particular fund. In both cases, the settling defendants’ promise to pay was contingent
at the time it was made. Here, the settlement agreements were not contingent at the time they were
made because the settling defendants, with the exception of Johns-Manville Trust, made
unconditional promises to pay. Neither McNair nor Cimino stands for the proposition that the post-settlement insolvency of a settling defendant transforms the promise to pay into a contingent one. 
We overrule Issue One.
NON-SETTLING PLAINTIFFS
            In Issue Two, Jason and Twyla argue that any settlement agreements reached before they
joined the suit should not be credited against their individual recoveries because their wrongful death
causes of action are distinct from the personal injury causes of action asserted by the decedent and
Mrs. Gilcrease. They further contend that we should apply Utts v. Short


 rather than Drilex in
determining the settlement credit. Garlock counters that since Drilex would treat all of the
Appellants as a single claimant regardless of when the settlements were entered, all of the
settlements should be credited against the entire jury award.
Drilex
            Jorge Flores was employed as a roughneck/floorhand for a drilling contractor when his hand
was severely injured. Drilex, 1 S.W.3d at 115. Jorge, his wife, and their three children sued the
defendants. Id. One defendant entered into a settlement with the Flores family and the remaining
defendants went to trial. Id. The jury returned a verdict apportioning responsibility among Jorge
and the defendants, and awarded a total of $2,145,000 in damages. Id. at 116. After applying a
settlement credit, the trial court awarded Jorge $1,929,048, and ordered that all other plaintiffs take
nothing. Id. The court of appeals allocated the settlement credit among the various family members
using a percent-allocation method and credited each individual plaintiff’s settlement payment against
each individual plaintiff’s jury award. Id. at 121. Because the children’s settlement payments
exceeded their jury awards, the court rendered a take-nothing judgment with respect to them, and
it split the jury award between Jorge and his wife. Id. The Supreme Court reversed, holding that
the term “claimant” as used in Sections 33.011(1) and 33.012(b) means all parties seeking recovery
of damages for injury to one person. Drilex, 1 S.W.3d at 122. Thus, those parties constitute one
claimant and the total of all damages to be recovered by the single claimant must be reduced by the
total of the settlement money received by the family. Id. It allocated the remaining damages among
the parties seeking recovery based on each party’s percentage of the total verdict awarded to the
claimant by the jury. Id.
Utts
            Clifton Short died following colon surgery. Utts, 81 S.W.3d at 825. Dorothy Short Walker,
four other family members, and the decedent’s estate sued Dr. Utts and HCA South Austin Medical
Center for wrongful death. Walker settled with HCA for $200,000. Pursuant to the settlement
agreement, HCA agreed to pay $50,000 to Walker and $150,000 to the family’s attorneys. The same
day she signed the settlement agreement, Walker signed another document asking the attorneys to
distribute from “any monies belonging to me that he or his firm may have in his possession,”
$10,000 to each of the other four family members. The individual family members and the estate
then settled with HCA for $10 each. Walker and the family non-suited their claims against HCA,
and Walker later non-suited her claim against Dr. Utts. Only the estate and the other four family
members remained as plaintiffs. Before trial, Dr. Utts filed his written election for a $200,040
dollar-for-dollar settlement credit under Chapter 33. The family and the estate objected, arguing
that they were the only “claimants” in the case, that HCA had settled with them for only $10 each,
and that Dr. Utts was only entitled to a credit of $10 per plaintiff.
            The remaining parties tried the case to a jury. The jury found Dr. Utts to be 25 percent
negligent and HCA to be 75 percent negligent. It awarded the estate $100,000, the decedent’s wife
$300,000, and the three children $12,000 each. The family and the estate moved for judgment on
the verdict, allowing only $10 per plaintiff, or $50 total settlement credit. Dr. Utts objected and
requested a credit for the entire $200,000 HCA paid to Walker because the Short family benefitted
from Walker’s settlement.
            In a plurality opinion, the Supreme Court determined that Drilex did not control the
settlement-credit issue.


 Utts, 81 S.W.3d at 827. The court held that when the facts suggest that a
non-settling plaintiff may have benefitted from the proceeds of another plaintiff’s settlement, the
non-settling defendant must raise this allegation in the trial court and present evidence of the benefit
received as part of its burden in electing a dollar-for-dollar credit. Id. at 829. If the non-settling
defendant meets its burden, the trial court shall presume the settlement credit applies unless the non-settling plaintiff offers evidence to overcome the presumption. Id.
            Utts did not overrule Drilex or modify its holding. Instead, the court concluded that Drilex’s
Chapter 33 settlement-credit analysis did not control the settlement-credit issue presented. Id. at 830
(Baker, J., concurring). Justice Owen noted in her dissent that “[t]here is at least a consensus of a
majority of the Court on one point: Drilex Systems, Inc. v. Flores remains good law when family
members settle but remain parties pursuing claims against a non-settling defendant.” Id. at 838
(Owen, J., dissenting).
            The facts here are somewhat different. Unlike Drilex – where all of the family members
settled with one defendant – Jason and Twyla did not enter into any settlement agreements, although 
there is evidence that they benefitted from the settlements entered into by their parents: Twyla
received $30,000 while Jason received $96,600. Yet the facts are distinguishable from Utts in that
the decedent and Mrs. Gilcrease were claimants at the time the case was submitted to the jury. We
conclude that this case is more akin to Drilex than Utts. Because Drilex holds that family members
asserting derivative claims must be treated as a single claimant rather than as individual claimants
when applying the settlement credit, we conclude that the trial court correctly applied the settlement
credit with respect to the claims of Jason and Twyla. Issue Two is overruled.
EXEMPLARY DAMAGES
            In Issue Three, Appellants argue that the trial court erred by applying the settlement credits
to the exemplary damages award. The purpose of Chapter 33 of the Civil Practice and Remedies
Code is to apportion the damages for which joint tortfeasors are liable, according to the percentage
of fault. Appellants rely on Section 33.002(c)(2) which provides that “[t]his chapter does not apply
to . . . a claim for exemplary damages included in an action to which this chapter otherwise applies
. . . .” Tex.Civ.Prac.& Rem.Code Ann. §33.002(c)(2) (Vernon Supp. 2006). We understand
Garlock to argue that Section 33.002(c)(2) means only that a non-settling defendant cannot claim
a settlement credit for that part of a settlement paid by a settling defendant for punitive damages. 
Garlock’s argument is contrary to the plain language of Section 33.002(c)(2), which expressly
excludes a claim for punitive damages from Chapter 33’s reach. Further, it is inconsistent with the
“one satisfaction rule.”
            Under the one satisfaction rule, the non-settling defendant may only claim a credit based on
the damages for which all tortfeasors are jointly liable. Crown Life Insurance Company v. Casteel,
22 S.W.3d 378, 391 (Tex. 2000); Paschall v. Peevey, 813 S.W.2d 710, 712 (Tex.App.--Austin 1991,
writ denied); Hill v. Budget Fin. & Thrift Co., 383 S.W.2d 79, 81 (Tex.Civ.App.--Dallas 1964, no
writ). Joint tortfeasors are defined as parties whose tortious conduct combines as a legal cause of
a single and indivisible harm to the injured party. Riley v. Industrial Finance Service Co., 302
S.W.2d 652, 655 (Tex. 1957), overruled on other grounds, McMillen v. Klingensmith, 467 S.W.2d
193, 197 (Tex. 1971); Landers v. East Texas Salt Water Disposal Co., 248 S.W.2d 731, 734 (Tex.
1952). The non-settling defendant is entitled to offset any liability for joint and several damages
by the amount of common damages paid by the settling defendant, but not for any amount of separate
or punitive damages paid by the settling defendant. Crown Life, 22 S.W.3d at 391-92; CTTI
Priesmeyer, Inc. v. K & O Ltd. Partnership, 164 S.W.3d 675, 684 (Tex.App.--Austin 2005, no pet.);
Texas Capital Securities, Inc. v. Sandefer, 108 S.W.3d 923, 926 (Tex.App.--Texarkana 2003, pet.
denied). Exemplary damages are to punish the gross negligence of the defendant in the interest of
public policy rather than to compensate the plaintiff. See I-Gotcha, Inc. v. McInnis, 903 S.W.2d 829,
840 (Tex.App.--Fort Worth 1995, writ denied).
            The jury below found by clear and convincing evidence that the harm to Mr. Gilcrease
resulted from Garlock’s malice and that the sum of $1,000,000 should be imposed as exemplary
damages. Despite these findings, Garlock contends that because Appellants’ counsel argued that the
jury could consider the conduct of other defendants in answering the exemplary damages questions,
it cannot be said that the exemplary damages were intended to punish Garlock for its own conduct. 
We disagree. The jury assessed exemplary damages against Garlock alone and it is not entitled to
offset its personal liability for exemplary damages by the amount of common damages paid by the
settling defendants. We do not address whether reversible error occurred from an improper final
argument.
            Citing the general rule that recovery of actual damages are a prerequisite to the receipt of
exemplary damages,


 Garlock next maintains that Appellants are not entitled to exemplary damages
because they did not recover any actual damages once the settlement credits were applied. See also
Rosell v. Central West Motor Stages, Inc., 89 S.W.3d 643, 661 (Tex.App.--Dallas 2002, pet. denied) 
(holding that a plaintiff could not recover exemplary damages when he did not recover actual
damages because the jury apportioned 70 percent of the responsibility for the injury to the plaintiff). 
Appellants are not barred from recovering their damages; their damages are simply offset by
settlements. The Civil Practice and Remedies Code speaks in terms of the award of actual damages
by the jury rather than their recovery. First, Section 41.004 provides that exemplary damages may
be awarded “only if damages other than nominal damages are awarded.” Tex.Civ.Prac.&
Rem.Code Ann. §41.004(a) (Vernon Supp. 2006). Second, Section 41.008(b)(1)-(2) provides that:
(b) Exemplary damages awarded against a defendant may not exceed an amount
equal to the greater of:
 
(1)(A) two times the amount of economic damages; plus
 
(B) an amount equal to any noneconomic damages found by the jury, not to exceed
$750,000; or
 
(2) $200,000.

Tex.Civ.Prac.& Rem.Code Ann. §41.008(b)(1)-(2) (Vernon Supp. 2006) (Emphasis added).

            Texas courts have held that punitive damage calculations are based on the jury’s award of
actual damages, not the amount actually recovered by the plaintiff in the judgment. See, e.g., Texas
Health Enterprises, Inc. v. Geisler, 9 S.W.3d 163, 169 (Tex.App.--Fort Worth 1999, pet.
dism’d)(punitive damages relate to the total amount of harm that occurred as reflected by the
damages awarded by the jury); Sears, Roebuck & Co. v. Kunze, 996 S.W.2d 416, 421 (Tex.App.--Beaumont 1999, pet. denied)(amount awarded by the jury is proper amount for purposes of punitive
damages calculation, rather than amount awarded in judgment reflecting reductions based on
plaintiff’s contributory negligence); I-Gotcha, Inc. v. McInnis, 903 S.W.2d 829, 840-41 (Tex.App.--Fort Worth 1995, writ denied)(actual damages used in punitive cap calculations refers to jury’s
damages findings prior to the reductions); Beverly Enterprises of Texas, Inc. v. Leath, 829 S.W.2d
382, 387-88 (Tex.App.--Waco 1992, writ withdrawn).
            In Beverly Enterprises, the jury awarded Leath a total of $158,366 in actual damages and
$500,000 in punitive damages. The defendant was credited for amounts paid to Leath before trial
and the actual damages award was reduced to $100,927. On appeal, the defendant argued that the
punitive damages were excessive because they exceeded the statutory limit of four times the amount
of actual damages. The court of appeals determined that the term “actual damages” used in former
Section 41.007


 referred to the total amount of damages found by the jury and that pretrial payments
did not reduce the amount of “actual damages” suffered by an injured party; they simply reduced the
amount of damages which were recoverable by that party after a trial. Beverly Enterprises, 829
S.W.2d at 388. The court further determined that the legislature did not intend that payments
received before trial would reduce a claimant’s right to punitive damages under the statute. Id.
            The Fort Worth Court of Appeals reached a similar conclusion in I-Gotcha, Inc. v. McInnis. 
There, a dram shop action was brought by the parents of a minor who drove after becoming
intoxicated in a bar and died in an automobile accident. The jury found the bar to be 51 percent at
fault and the child 49 percent at fault; it awarded the parents $450,000 in actual damages and
$1,500,000 in punitive damages. The actual damage award was reduced based on the comparative
responsibility percentage of the child, and as a result, the punitive damages award was more than
four times the parents’ actual recovery. On appeal, the defendant argued that the punitive damages
award exceeded the statutory cap. Citing Beverly Enterprises, the court of appeals concluded that 
“actual damages” as used in the punitive damages cap refers to the damage findings of the jury prior
to reduction for contributory negligence findings. I-Gotcha, 903 S.W.2d at 840-41.
            Similarly, we conclude that Appellants are entitled to recover punitive damages based on the
jury’s award of actual damages, even though their recovery of actual damages is offset by the
settlement credit. Issue Three is sustained.
CROSS-APPEAL
            In the first issue of its conditional cross-appeal, Garlock contends that the judgment must be
reversed and the cause remanded for trial in Bexar County because venue was improper in El Paso
County. Garlock argues that venue in Bexar County had been established by Appellants and that
they failed to establish El Paso was the proper venue pursuant to Tex.Civ.Prac.& Rem.Code Ann.
§15.002(a)(3) (Vernon 2002).
            Our review of the trial court’s ruling is governed by statute. Tex.Civ.Prac.& Rem.Code
Ann. §15.064(b) (Vernon 2002); Wilson v. Texas Parks & Wildlife Department, 886 S.W.2d 259,
261 (Tex. 1994). In determining whether venue was proper, we must conduct an independent review
of the entire record for any probative evidence that venue was proper in the original county of suit. 
Tex.Civ.Prac.& Rem.Code Ann. §15.064(b); Wilson, 886 S.W.2d at 261-62. This review
preserves the plaintiff’s right to select and maintain suit in a county of proper venue, and it protects
the defendant from fraud or inaccuracy at the pleading stage. Wilson, 886 S.W.2d at 262.
            The review should be conducted like any other review of the trial court’s findings of fact and
legal rulings, except that the evidence need not be reviewed for factual sufficiency. Ruiz v. Conoco,
868 S.W.2d 752, 758 (Tex. 1993). If there is probative evidence to support the trial court’s
determination, even if the preponderance of the evidence is to the contrary, we must uphold the trial
court’s determination. Wilson, 886 S.W.2d at 262. We do not review the sufficiency of the evidence
supporting the plaintiff’s venue choice. Ruiz, 868 S.W.2d at 758; Chiriboga v. State Farm Mutual
Auto Insurance Company, 96 S.W.3d 673, 678 (Tex.App.--Austin 2003, no pet.). Although we view
the record in the light most favorable to the trial court’s ruling, we do not defer to the trial court’s
application of the law to the facts of the case. See Ruiz, 868 S.W.2d at 758.
            Venue is generally proper (1) in the county in which all or a substantial part of the events or
omissions giving rise to the claim occurred; (2) in the county of defendant’s residence at the time
of the accrual of the course of action; or (3) in the county of the defendant’s principal office in this
state, if the defendant is not a natural person. See Tex.Civ.Prac.& Rem.Code Ann. §15.002(a)
(Vernon 2002). Venue selection presupposes that the parties to the lawsuit have choices and
preferences about where their case will be tried. Wilson, 886 S.W.2d at 260. Since venue may be
proper in numerous counties, the plaintiff is given the first choice to fix venue in a proper county and
does so by filing suit in the county of his choosing. Id.; Eddins v. Parker, 63 S.W.3d 15, 18
(Tex.App.--El Paso 2001, pet. denied). When a county in which the plaintiff files suit is at least a
permissive venue and when no mandatory provision applies, the plaintiff’s venue choice cannot be
disturbed. See Wilson, 886 S.W.2d at 260; Chiriboga, 96 S.W.3d at 677.
            A venue determination made prior to a nonsuit is conclusive in a subsequent refiling of the
same cause of action against the same parties. Hendrick Medical Center v. Howell, 690 S.W.2d 42,
44 (Tex.App.--Dallas 1985, no writ). This rule is consistent with the legislature’s intent, as further
reflected in Rule 87 of the Texas Rules of Civil Procedure, that there be only one venue
determination in a cause of action. See Hendrick Medical Center, 690 S.W.2d at 44; Tex.R.Civ.P.
87. Venue of any subsequent suit involving the same subject matter and the same parties as the
initial suit is governed by the venue determination in the initial suit. Miller v. State and County
Mutual Fire Insurance Company, 1 S.W.3d 709, 713 (Tex.App.--Fort Worth 1999, pet. denied).
            In the initial lawsuit in Bexar County, Appellants sued more than thirty defendants, including
Garlock. Garlock moved to transfer venue but the trial court denied the motion, thereby fixing venue
in Bexar County. See Hendrick Medical Center, 690 S.W.2d at 44. Appellants then non-suited the
claim and immediately filed a new suit in El Paso County, pleading the same causes of action against
Garlock and adding Federal-Mogul as a defendant. Garlock moved to transfer venue back to Bexar
County, but the court below denied the motion.
            It is undisputed that this lawsuit originated in Bexar County, that Garlock was a party to the
original suit, and that the claims brought against Garlock in the instant suit are identical to the claims
asserted against it in Bexar County. Federal-Mogul filed for bankruptcy on October 1, 2001,
approximately one week after the El Paso suit was filed and before service could be effected,
essentially making it a non-party. See Tex.R.Civ.P. 21. Because the Bexar County court denied
Garlock’s motion to transfer before Appellants non-suited, the venue determination was fixed with
regard to any subsequent filing. See Hendrick Medical Center, 690 S.W.2d at 44; Miller, 1 S.W.3d
at 713. We therefore hold that the trial court erred by denying Garlock’s motion to transfer venue
back to Bexar County. Garlock’s first issue is sustained. In light of our disposition of the venue
issue, it is unnecessary to address Garlock’s remaining issues. We reverse the trial court’s judgment
and remand the case to the trial court with instructions to transfer the suit to Bexar County for a new
trial.
                                                                        ANN CRAWFORD McCLURE, Justice

December 21, 2006

Before Panel No. 5
McClure, J., Barajas, C.J. (Ret.), and Parks, J.
Barajas, C.J. (Ret.), sitting by assignment, not participating
Parks, J., sitting by assignment