Dorothy GILCREASE, Individually, and as Representative of the Estate of Fred Gilcrease, Deceased, Jason Gilcrease, and Missy (Twyla) Hyman/Garlock, Inc., Appellants/Cross–Appellees,

v.

GARLOCK, INC.,/Dorothy Gilcrease, Individually, and as Representative of the Estate of Fred Gilcrease, Deceased, Jason Gilcrease, and Missy (Twyla) Hyman, Appellee/Cross–Appellant.

No. 08–04–00367–CV.

Court of Appeals of Texas, El Paso.

Dec. 21, 2006.

Charles S. Siegel, Waters & Kraus, LLP, Dallas, for appellants.

Joe A. Spencer, Jr., El Paso, Cary Schachter, Schachter & Harris, Dallas, Mitchell Chaney, Rodriguez, Colvin, Chaney & Saenz, Brownsville, for appellee.

Before Panel No. 5 McCLURE, J., BARAJAS, C.J. (Ret.), and PARKS, J.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Dorothy Gilcrease, individually and as representative of the estate of Fred Gilcrease, Jason Gilcrease, and Missy (Twyla) Hyman (Appellants), appeal from a take-nothing judgment entered in favor of Garlock, Inc. following a jury trial. The take-nothing judgment followed the trial court's determination that Garlock was entitled to receive settlement credits of $4,572,354 against the actual and exemplary damages of $3,547,798.26 awarded by the jury. We reverse and remand.

### FACTUAL SUMMARY

Sixty-two-year-old Fred Gilcrease had worked as a union pipefitter and plumber since 1957, or "all of [his] working life." During this time, he was exposed to many asbestos products. As a pipefitter, he worked mainly with gaskets, including Garlock gaskets which contained asbestos. In the course of his work, Mr. Gilcrease removed and replaced Garlock gaskets, many times using a wire brush, scraper, sander, or grinder to do so. This process created a dusty environment to which Mr. Gilcrease was exposed on a regular basis. In March 1999, Mr. Gilcrease was diagnosed with mesothelioma as a result of his exposure to asbestos.

In 1999, Mr. and Mrs. Gilcrease filed a suit in Bexar County against multiple defendants for damages arising from Mr. Gilcrease's exposure to asbestos and resulting mesothelioma. While the suit was pending in Bexar County, a majority of the defendants settled. After Mr. Gilcrease died on November 21, 2000, the pleadings were amended to add the Gilcreases' adult children—Jason Gilcrease and Twyla Hyman—as plaintiffs. Jason and Twyla signed heirship agreements which entitled

each to 10 percent of the proceeds of the wrongful death lawsuit.

On September 25, 2001, Appellants non-suited their claim against Garlock in Bexar County. The following day, Appellants filed an original petition asserting identical claims against Garlock, A.P. Green Industries, Inc., Dresser Industries, Inc., Federal–Mogul Corporation, Guard–Line, Inc., Harbison–Walker Refractories Company, and T & N, Ltd. Garlock sought to have venue returned to Bexar County, but the trial court denied the motion. Appellants' first amended petition named only Dresser Industries, Garlock, and Guard–Line as defendants. The trial court directed a verdict in favor of Guard–Line. Appellants settled with Dresser Industries for $350,000.[1]

Apportioning Garlock's responsibility for the decedent's injury at 25 percent, the jury awarded the following damages:

(1) for Mr. Gilcrease: $1.5 million for physical pain and mental anguish, $50,000 for disfigurement, and $50,798.26 for medical care expense;

(2) for Mrs. Gilcrease: $10,000 for past pecuniary loss, $20,000 for future pecuniary loss, $20,000 for loss of companionship and society in the past, $50,000 for loss of companionship and society in the future, $15,000 for mental anguish in the past and $5,000 for mental anguish in the future;

(3) for Twyla Hyman: $10,000 for pecuniary loss in the past, $12,000 for pecuniary loss in the future, $10,000 for loss of companionship and society in the past, $10,000 for loss of companionship and society in the future, and $10,000 for mental anguish in the past; and

(4) for Jason Gilcrease: $100,000 for pecuniary loss sustained in the past, $150,000 for pecuniary loss sustained in the future, $100,000 for loss of companionship and society in the past, $150,000 for loss of companionship and society in the future, $150,000 for mental anguish in the past, and $125,000 for mental anguish in the future.

The jury awarded $2,547,798.26 for compensatory damages and $1,000,000 in exemplary damages. The total damages were apportioned between Appellants as follows: 50 percent to Mrs. Gilcrease, 30 percent to Jason, and 20 percent to Twyla.

Appellants' motion for entry of judgment included a list of settlements in the total amount of $2,407,179. This included a $200,000 settlement from the Manville Trust of which only $20,000 had been paid. The Manville Trust had executed a note for the remaining $180,000, but Appellants contended this was a contingent payment which more than likely would never be paid. The list also contained settlements with three defendants that had declared bankruptcy: A.P. Green Industries ($750,000); Owens–Corning Fiberglas ($300,000); and Fibreboard ($900,000).[2] Appellants argued that these settlements were void and should not count as credits because they had not been paid. Following a hearing, the trial court entered the following findings:

---

1. Dresser is a successor-in-interest to Harbison–Walker Refractories Company. Appellants settled with Harbison–Walker on November 30, 2000, but Harbison–Walker declared bankruptcy without having paid the settlement. A new agreement was reached with Dresser providing that $350,000 would be paid in installments and earn interest. As of October 29, 2004, Dresser had paid $314,825 of the $350,000 settlement amount, plus $21,204 in interest.

2. A.P. Green declared bankruptcy on February 14, 2002 and Owens–Corning Fiberglas and Fibreboard declared bankruptcy on October 5, 2000.

(1) Garlock is entitled to a settlement credit in the amount of $4,572,354;

(2) Mr. Gilcrease and his family are one claimant as the term is used in applying credit against judgment for settlement amounts previously paid; and

(3) settlement credits are not limited to actual or compensatory damages and Garlock is entitled to an offset for punitive damages.

The trial court entered a take-nothing judgment because the settlement credits exceeded the damages awarded by the jury. Appellants timely filed their notice of appeal and Garlock filed a notice of conditional cross-appeal.

### SETTLEMENT CREDIT

Appellants raise three issues challenging the settlement credits. In Issue One, they argue that the trial court erred in crediting settlement amounts from bankrupt settling parties because the agreements are contingent. In Issue Two, Jason and Twyla complain that settlement agreements entered into before they joined the suit should not be credited against their recoveries. And in Issue Three, Appellants contend that the settlement credits should not have been applied to exemplary damages.

Application of the settlement credit is governed by Chapter 33 of the Civil Practice and Remedies Code. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 33.002(a) (Vernon Supp.2006); *Drilex Systems, Inc. v. Flores*, 1 S.W.3d 112, 121 (Tex.1999). The relevant version of Section 33.012 required the trial court to reduce the judgment according to one of two methods elected by the defendant: a dollar-for-dollar credit or a sliding scale. Acts 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex.Gen.Laws 971, 974

[current version found at TEX.CIV.PRAC. & REM.CODE ANN. § 33.012 (Vernon Supp. 2006) ].[3] Garlock elected the dollar-for-dollar credit in Section 33.012(b)(1):

If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a credit equal to

. . .

(1) the sum of the dollar amounts of all settlements. . . .

Section 33.011(1) defines "claimant" as a person seeking recovery of damages pursuant to the provisions of Section 33.001. Acts 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex.Gen.Laws 971, 973 [current version found at TEX.CIV.PRAC. & REM.CODE ANN. § 33.011(1) (Vernon Supp.2006) ]. In an action in which a party seeks recovery of damages for injury to another person, damage to the property of another person, death of another person, or other harm to another person, "claimant" includes both that other person and the party seeking recovery of damages pursuant to the provisions of Section 33.001. *Id.* A "settling person" is defined as a person who at the time of submission has paid or promised to pay money or anything of monetary value to a claimant at any time in consideration of potential liability pursuant to the provisions of Section 33.001 with respect to the personal injury, property damage, death, or other harm for which recovery of damages is sought. Acts 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex.Gen.Laws 971, 973 [current version found at TEX.CIV.PRAC. & REM.CODE ANN. § 33.011(5) (Vernon Supp. 2006) ].

### BANKRUPT SETTLING PARTIES

■ Citing *McNair v. Owens–Corning*

---

**3.** Section 33.012 was amended effective September 1, 2005. Because the final judgment was entered prior to the effective date of the amendment, the former version will be applied. All references to Section 33.012 are to the former version unless noted otherwise.

*Fiberglas Corporation*[4] and *Cimino v. Raymark Industries, Inc.*,[5] Appellants argue that Garlock should not have been credited for the settlement amounts of Manville Trust, A.P. Green Industries, Owens–Corning Fiberglas and Fibreboard, a total of $2,130,000, because the settlements were contingent. Disallowing these settlement amounts would reduce the total settlement credit to $2,442,354 and result in a judgment in favor of Appellants in the amount of $1,105,444.26. Garlock responds that the settlement agreements with A.P. Green Industries, Owens–Corning Fiberglas and Fibreboard were not contingent and the trial court properly credited these amounts. Garlock concedes that the $180,000 portion of the settlement with Johns–Manville was expressly made contingent upon the realization of payments from the Manville Trust and is "probably not allowable as a § 33.012(b)(1) settlement credit."

We turn to Garlock's authorities. *McNair* is also an asbestos exposure case. The McNairs settled with ten of twelve defendants before trial. They entered into cash settlements with most of the settling defendants, but they also received notes from two other defendants. Payment of both notes was expressly made contingent on the outcome of litigation between the two defendants and their insurance carriers. The jury returned a verdict for the McNairs and the trial court credited the non-settling defendants with the cash settlements, but the court refused to reduce the non-settling defendants' liability by the amount of the notes. Instead, the trial court assigned the notes to the two non-settling defendants. On appeal, the non-settling defendants argued that the trial court should have reduced the recovery by

the amount of the two notes. The Fifth Circuit affirmed, holding that at the time judgment was entered, the McNairs were not entitled to the cash value of the settlements because payment was contingent on the outcome of the litigation between the defendants and their insurers. *McNair*, 890 F.2d at 756. If the litigation resulted in no additional monies being due, then the total settlement remained at the original amount. *Id.* If the litigation resulted in additional payments being due under either settlement agreement, the total settlement amount would increase and the defendants would have paid more than what was due under Section 33.012. *Id.* But the defendants would be made whole when the amounts due under the notes were paid directly to the liable defendants.

In *Cimino*, the plaintiffs reached a non-cash settlement agreement with an insolvent defendant, Johns–Manville Corporation. The defendant promised to pay the plaintiffs a specified sum of money out of the Johns–Manville Trust Fund over a period of years with the first payment not due until 1991. The Fifth Circuit, which likened the settlement agreement to a promissory note, found that payment was contingent on the outcome of the bankruptcy proceedings and on the continued financial viability of the Johns–Manville Trust Fund which had reached a critical condition. *Cimino*, 751 F.Supp. at 656–57.

The instant case is factually distinguishable from both *McNair* and *Cimino*. In *McNair*, the settlement agreement was expressly made contingent on the outcome of the litigation between the defendants and their insurers. In *Cimino*, the bankrupt defendant agreed to pay the settlement over time out of a particular fund. In both

**4.** *McNair v. Owens–Corning Fiberglas Corporation*, 890 F.2d 753 (5th Cir.1989).

**5.** *Cimino v. Raymark Ind.*, 751 F.Supp. 649 (E.D.Tex.1990), *aff'd in part, vacated in part on other grounds*, 151 F.3d 297 (5th Cir.1998).

cases, the settling defendants' promise to pay was contingent at the time it was made. Here, the settlement agreements were not contingent at the time they were made because the settling defendants, with the exception of Johns–Manville Trust, made unconditional promises to pay. Neither *McNair* nor *Cimino* stands for the proposition that the post-settlement insolvency of a settling defendant transforms the promise to pay into a contingent one. We overrule Issue One.

## NON–SETTLING PLAINTIFFS

■ In Issue Two, Jason and Twyla argue that any settlement agreements reached before they joined the suit should not be credited against their individual recoveries because their wrongful death causes of action are distinct from the personal injury causes of action asserted by the decedent and Mrs. Gilcrease. They further contend that we should apply *Utts v. Short*[6] rather than *Drilex* in determining the settlement credit. Garlock counters that since *Drilex* would treat all of the Appellants as a single claimant regardless of when the settlements were entered, all of the settlements should be credited against the entire jury award.

### Drilex

Jorge Flores was employed as a roughneck/floorhand for a drilling contractor when his hand was severely injured. *Drilex*, 1 S.W.3d at 115. Jorge, his wife, and their three children sued the defendants. *Id.* One defendant entered into a settlement with the Flores family and the remaining defendants went to trial. *Id.* The jury returned a verdict apportioning responsibility among Jorge and the defendants, and awarded a total of $2,145,000 in damages. *Id.* at 116. After applying a settlement credit, the trial court awarded

Jorge $1,929,048, and ordered that all other plaintiffs take nothing. *Id.* The court of appeals allocated the settlement credit among the various family members using a percent-allocation method and credited each individual plaintiff's settlement payment against each individual plaintiff's jury award. *Id.* at 121. Because the children's settlement payments exceeded their jury awards, the court rendered a take-nothing judgment with respect to them, and it split the jury award between Jorge and his wife. *Id.* The Supreme Court reversed, holding that the term "claimant" as used in Sections 33.011(1) and 33.012(b) means all parties seeking recovery of damages for injury to one person. *Drilex*, 1 S.W.3d at 122. Thus, those parties constitute one claimant and the total of all damages to be recovered by the single claimant must be reduced by the total of the settlement money received by the family. *Id.* It allocated the remaining damages among the parties seeking recovery based on each party's percentage of the total verdict awarded to the claimant by the jury. *Id.*

### Utts

Clifton Short died following colon surgery. *Utts*, 81 S.W.3d at 825. Dorothy Short Walker, four other family members, and the decedent's estate sued Dr. Utts and HCA South Austin Medical Center for wrongful death. Walker settled with HCA for $200,000. Pursuant to the settlement agreement, HCA agreed to pay $50,000 to Walker and $150,000 to the family's attorneys. The same day she signed the settlement agreement, Walker signed another document asking the attorneys to distribute from "any monies belonging to me that he or his firm may have in his possession," $10,000 to each of the other four family

6. *Utts v. Short,* 81 S.W.3d 822 (Tex.2002).

members. The individual family members and the estate then settled with HCA for $10 each. Walker and the family non-suited their claims against HCA, and Walker later non-suited her claim against Dr. Utts. Only the estate and the other four family members remained as plaintiffs. Before trial, Dr. Utts filed his written election for a $200,040 dollar-for-dollar settlement credit under Chapter 33. The family and the estate objected, arguing that they were the only "claimants" in the case, that HCA had settled with them for only $10 each, and that Dr. Utts was only entitled to a credit of $10 per plaintiff.

The remaining parties tried the case to a jury. The jury found Dr. Utts to be 25 percent negligent and HCA to be 75 percent negligent. It awarded the estate $100,000, the decedent's wife $300,000, and the three children $12,000 each. The family and the estate moved for judgment on the verdict, allowing only $10 per plaintiff, or $50 total settlement credit. Dr. Utts objected and requested a credit for the entire $200,000 HCA paid to Walker because the Short family benefitted from Walker's settlement.

In a plurality opinion, the Supreme Court determined that *Drilex* did not control the settlement-credit issue.[7] *Utts*, 81 S.W.3d at 827. The court held that when the facts suggest that a non-settling plaintiff may have benefitted from the proceeds of another plaintiff's settlement, the non-settling defendant must raise this allegation in the trial court and present evidence of the benefit received as part of its burden in electing a dollar-for-dollar credit. *Id.* at 829. If the non-settling defendant meets its burden, the trial court shall pre-

sume the settlement credit applies unless the non-settling plaintiff offers evidence to overcome the presumption. *Id.*

*Utts* did not overrule *Drilex* or modify its holding. Instead, the court concluded that *Drilex's* Chapter 33 settlement-credit analysis did not control the settlement-credit issue presented. *Id.* at 830 (Baker, J., concurring). Justice Owen noted in her dissent that "[t]here is at least a consensus of a majority of the Court on one point: *Drilex Systems, Inc. v. Flores* remains good law when family members settle but remain parties pursuing claims against a non-settling defendant." *Id.* at 838 (Owen, J., dissenting).

The facts here are somewhat different. Unlike *Drilex*—where all of the family members settled with one defendant—Jason and Twyla did not enter into any settlement agreements, although there is evidence that they benefitted from the settlements entered into by their parents: Twyla received $30,000 while Jason received $96,600. Yet the facts are distinguishable from *Utts* in that the decedent and Mrs. Gilcrease were claimants at the time the case was submitted to the jury. We conclude that this case is more akin to *Drilex* than *Utts*. Because *Drilex* holds that family members asserting derivative claims must be treated as a single claimant rather than as individual claimants when applying the settlement credit, we conclude that the trial court correctly applied the settlement credit with respect to the claims of Jason and Twyla. Issue Two is overruled.

## EXEMPLARY DAMAGES

In Issue Three, Appellants argue that the trial court erred by applying the

---

7. Four members of the court contended that *Drilex* was wrongly decided and should be overruled, while two members argued that *Drilex* was distinguishable and did not control because Walker was not a party seeking dam-

ages when the trial court submitted the case to the jury. *Utts*, 81 S.W.3d at 827. Three members of the court took the position that *Drilex* was correctly decided and should be applied.

settlement credits to the exemplary damages award. The purpose of Chapter 33 of the Civil Practice and Remedies Code is to apportion the damages for which joint tortfeasors are liable, according to the percentage of fault. Appellants rely on Section 33.002(c)(2) which provides that "[t]his chapter does not apply to ... a claim for exemplary damages included in an action to which this chapter otherwise applies...." TEX.CIV.PRAC. & REM.CODE ANN. § 33.002(c)(2) (Vernon Supp.2006). We understand Garlock to argue that Section 33.002(c)(2) means only that a non-settling defendant cannot claim a settlement credit for that part of a settlement paid by a settling defendant for punitive damages. Garlock's argument is contrary to the plain language of Section 33.002(c)(2), which expressly excludes a claim for punitive damages from Chapter 33's reach. Further, it is inconsistent with the "one satisfaction rule."

■■■ Under the one satisfaction rule, the non-settling defendant may only claim a credit based on the damages for which all tortfeasors are jointly liable. *Crown Life Insurance Company v. Casteel*, 22 S.W.3d 378, 391 (Tex.2000); *Paschall v. Peevey*, 813 S.W.2d 710, 712 (Tex.App.-Austin 1991, writ denied); *Hill v. Budget Fin. & Thrift Co.*, 383 S.W.2d 79, 81 (Tex. Civ.App.-Dallas 1964, no writ). Joint tortfeasors are defined as parties whose tortious conduct combines as a legal cause of a single and indivisible harm to the injured party. *Riley v. Industrial Finance Service Co.*, 157 Tex. 306, 302 S.W.2d 652, 655 (1957), *overruled on other grounds*, *McMillen v. Klingensmith*, 467 S.W.2d 193, 197 (Tex.1971); *Landers v. East Texas Salt Water Disposal Co.*, 151 Tex. 251, 248 S.W.2d 731, 734 (1952). The non-settling defendant is entitled to offset *any*

*liability for joint and several damages* by the amount of common damages paid by the settling defendant, but not for any amount of separate or punitive damages paid by the settling defendant. *Crown Life*, 22 S.W.3d at 391–92; *CTTI Priesmeyer, Inc. v. K & O Ltd. Partnership*, 164 S.W.3d 675, 684 (Tex.App.-Austin 2005, no pet.); *Texas Capital Securities, Inc. v. Sandefer*, 108 S.W.3d 923, 926 (Tex.App.-Texarkana 2003, pet. denied). Exemplary damages are to punish the gross negligence of the defendant in the interest of public policy rather than to compensate the plaintiff. *See I–Gotcha, Inc. v. McInnis*, 903 S.W.2d 829, 840 (Tex.App.-Fort Worth 1995, writ denied).

The jury below found by clear and convincing evidence that the harm to Mr. Gilcrease resulted from Garlock's malice and that the sum of $1,000,000 should be imposed as exemplary damages. Despite these findings, Garlock contends that because Appellants' counsel argued that the jury could consider the conduct of other defendants in answering the exemplary damages questions, it cannot be said that the exemplary damages were intended to punish Garlock for its own conduct. We disagree. The jury assessed exemplary damages against Garlock alone and it is not entitled to offset its personal liability for exemplary damages by the amount of common damages paid by the settling defendants. We do not address whether reversible error occurred from an improper final argument.

■■ Citing the general rule that recovery of actual damages are a prerequisite to the receipt of exemplary damages,[8] Garlock next maintains that Appellants are not entitled to exemplary damages because they did not recover any actual damages

---

8. *See Juliette Fowler Homes v. Welch Associates*, 793 S.W.2d 660, 667 (Tex.1990); *Dou-*

*bleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 753–754 (Tex.1984).

once the settlement credits were applied. *See also Rosell v. Central West Motor Stages, Inc.,* 89 S.W.3d 643, 661 (Tex.App.-Dallas 2002, pet. denied) (holding that a plaintiff could not recover exemplary damages when he did not recover actual damages because the jury apportioned 70 percent of the responsibility for the injury to the plaintiff). Appellants are not barred from recovering their damages; their damages are simply offset by settlements. The Civil Practice and Remedies Code speaks in terms of the *award* of actual damages by the jury rather than their *recovery.* First, Section 41.004 provides that exemplary damages may be awarded "only if damages other than nominal damages *are awarded.*" Tex.Civ.Prac. & Rem. Code Ann. § 41.004(a) (Vernon Supp.2006). Second, Section 41.008(b)(1)-(2) provides that:

> (b) Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of:
>
> (1)(A) two times the amount of economic damages; plus
>
> (B) an amount equal to any noneconomic damages *found by the jury,* not to exceed $750,000; or
>
> (2) $200,000.

Tex.Civ.Prac. & Rem.Code Ann. § 41.008(b)(1)-(2) (Vernon Supp.2006) (Emphasis added).

Texas courts have held that punitive damage calculations are based on the jury's award of actual damages, not the amount actually recovered by the plaintiff in the judgment. *See, e.g., Texas Health Enterprises, Inc. v. Geisler,* 9 S.W.3d 163, 169 (Tex.App.-Fort Worth 1999, pet. dism'd)(punitive damages relate to the to-tal amount of harm that occurred as reflected by the damages awarded by the jury); *Sears, Roebuck & Co. v. Kunze,* 996 S.W.2d 416, 421 (Tex.App.-Beaumont 1999, pet. denied)(amount awarded by the jury is proper amount for purposes of punitive damages calculation, rather than amount awarded in judgment reflecting reductions based on plaintiff's contributory negligence); *I-Gotcha, Inc. v. McInnis,* 903 S.W.2d 829, 840–41 (Tex.App.-Fort Worth 1995, writ denied)(actual damages used in punitive cap calculations refers to jury's damages findings prior to the reductions); *Beverly Enterprises of Texas, Inc. v. Leath,* 829 S.W.2d 382, 387–88 (Tex.App.-Waco 1992, writ withdrawn).

In *Beverly Enterprises,* the jury awarded Leath a total of $158,366 in actual damages and $500,000 in punitive damages. The defendant was credited for amounts paid to Leath before trial and the actual damages award was reduced to $100,927. On appeal, the defendant argued that the punitive damages were excessive because they exceeded the statutory limit of four times the amount of actual damages. The court of appeals determined that the term "actual damages" used in former Section 41.007[9] referred to the total amount of damages found by the jury and that pre-trial payments did not reduce the amount of "actual damages" suffered by an injured party; they simply reduced the amount of damages which were recoverable by that party after a trial. *Beverly Enterprises,* 829 S.W.2d at 388. The court further determined that the legislature did not intend that payments received before trial would reduce a claimant's right to punitive damages under the statute. *Id.*

---

**9.** The former version of Section 41.008, previously numbered as 41.007, provided that punitive damages "may not exceed four times the amount of actual damages or $200,000, whichever is greater." Acts 1987, 70th Leg.,1st C.S., ch. 2, § 2.12, 1987 Tex.Gen. Laws 44, 46 [current version found at Tex.Civ. Prac. & Rem.Code Ann. § 41.008 (Vernon Supp. 2006)].

The Fort Worth Court of Appeals reached a similar conclusion in *I–Gotcha, Inc. v. McInnis.* There, a dram shop action was brought by the parents of a minor who drove after becoming intoxicated in a bar and died in an automobile accident. The jury found the bar to be 51 percent at fault and the child 49 percent at fault; it awarded the parents $450,000 in actual damages and $1,500,000 in punitive damages. The actual damage award was reduced based on the comparative responsibility percentage of the child, and as a result, the punitive damages award was more than four times the parents' actual recovery. On appeal, the defendant argued that the punitive damages award exceeded the statutory cap. Citing *Beverly Enterprises,* the court of appeals concluded that "actual damages" as used in the punitive damages cap refers to the damage findings of the jury prior to reduction for contributory negligence findings. *I–Gotcha,* 903 S.W.2d at 840–41.

Similarly, we conclude that Appellants are entitled to recover punitive damages based on the jury's award of actual damages, even though their recovery of actual damages is offset by the settlement credit. Issue Three is sustained.

### CROSS–APPEAL

■ In the first issue of its conditional cross-appeal, Garlock contends that the judgment must be reversed and the cause remanded for trial in Bexar County because venue was improper in El Paso County. Garlock argues that venue in Bexar County had been established by Appellants and that they failed to establish El Paso was the proper venue pursuant to TEX.CIV.PRAC. & REM.CODE Ann. § 15.002(a)(3) (Vernon 2002).

■ Our review of the trial court's ruling is governed by statute. TEX.CIV.PRAC. & REM.CODE ANN. § 15.064(b) (Vernon 2002); *Wilson v. Texas Parks & Wildlife Department,* 886 S.W.2d 259, 261 (Tex. 1994). In determining whether venue was proper, we must conduct an independent review of the entire record for any probative evidence that venue was proper in the original county of suit. TEX.CIV.PRAC. & REM.CODE ANN. § 15.064(b); *Wilson,* 886 S.W.2d at 261–62. This review preserves the plaintiff's right to select and maintain suit in a county of proper venue, and it protects the defendant from fraud or inaccuracy at the pleading stage. *Wilson,* 886 S.W.2d at 262.

■ The review should be conducted like any other review of the trial court's findings of fact and legal rulings, except that the evidence need not be reviewed for factual sufficiency. *Ruiz v. Conoco,* 868 S.W.2d 752, 758 (Tex.1993). If there is probative evidence to support the trial court's determination, even if the preponderance of the evidence is to the contrary, we must uphold the trial court's determination. *Wilson,* 886 S.W.2d at 262. We do not review the sufficiency of the evidence supporting the plaintiff's venue choice. *Ruiz,* 868 S.W.2d at 758; *Chiriboga v. State Farm Mutual Auto. Insurance Company,* 96 S.W.3d 673, 678 (Tex.App.-Austin 2003, no pet.). Although we view the record in the light most favorable to the trial court's ruling, we do not defer to the trial court's application of the law to the facts of the case. *See Ruiz,* 868 S.W.2d at 758.

■ Venue is generally proper (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred; (2) in the county of defendant's residence at the time of the accrual of the course of action; or (3) in the county of the defendant's principal office in this state, if the defendant is not a natural person. *See* TEX.CIV.PRAC. & REM.

CODE ANN. § 15.002(a) (Vernon 2002). Venue selection presupposes that the parties to the lawsuit have choices and preferences about where their case will be tried. *Wilson*, 886 S.W.2d at 260. Since venue may be proper in numerous counties, the plaintiff is given the first choice to fix venue in a proper county and does so by filing suit in the county of his choosing. *Id.; Eddins v. Parker*, 63 S.W.3d 15, 18 (Tex.App.-El Paso 2001, pet. denied). When a county in which the plaintiff files suit is at least a permissive venue and when no mandatory provision applies, the plaintiff's venue choice cannot be disturbed. *See Wilson*, 886 S.W.2d at 260; *Chiriboga*, 96 S.W.3d at 677.

 A venue determination made prior to a nonsuit is conclusive in a subsequent refiling of the same cause of action against the same parties. *Hendrick Medical Center v. Howell*, 690 S.W.2d 42, 44 (Tex.App.-Dallas 1985, no writ). This rule is consistent with the legislature's intent, as further reflected in Rule 87 of the Texas Rules of Civil Procedure, that there be only one venue determination in a cause of action. *See Hendrick Medical Center*, 690 S.W.2d at 44; TEX.R.CIV.P. 87. Venue of any subsequent suit involving the same subject matter and the same parties as the initial suit is governed by the venue determination in the initial suit. *Miller v. State and County Mutual Fire Insurance Company*, 1 S.W.3d 709, 713 (Tex.App.-Fort Worth 1999, pet. denied).

In the initial lawsuit in Bexar County, Appellants sued more than thirty defendants, including Garlock. Garlock moved to transfer venue but the trial court denied the motion, thereby fixing venue in Bexar County. *See Hendrick Medical Center*, 690 S.W.2d at 44. Appellants then nonsuited the claim and immediately filed a new suit in El Paso County, pleading the same causes of action against Garlock and adding Federal–Mogul as a defendant. Garlock moved to transfer venue back to Bexar County, but the court below denied the motion.

It is undisputed that this lawsuit originated in Bexar County, that Garlock was a party to the original suit, and that the claims brought against Garlock in the instant suit are identical to the claims asserted against it in Bexar County. Federal–Mogul filed for bankruptcy on October 1, 2001, approximately one week after the El Paso suit was filed and before service could be effected, essentially making it a non-party. *See* TEX.R.CIV.P. 21. Because the Bexar County court denied Garlock's motion to transfer before Appellants nonsuited, the venue determination was fixed with regard to any subsequent filing. *See Hendrick Medical Center*, 690 S.W.2d at 44; *Miller*, 1 S.W.3d at 713. We therefore hold that the trial court erred by denying Garlock's motion to transfer venue back to Bexar County. Garlock's first issue is sustained. In light of our disposition of the venue issue, it is unnecessary to address Garlock's remaining issues. We reverse the trial court's judgment and remand the case to the trial court with instructions to transfer the suit to Bexar County for a new trial.

BARAJAS, C.J. (Ret.), sitting by assignment, not participating.

PARKS, J., sitting by assignment.