IN THE SUPREME COURT OF TEXAS
 
════════════
No. 
09-0048
════════════
 
MCI Sales and Service, Inc., 
f/k/a Hausman Bus Sales, Inc. and Motor Coach 
Industries Mexico, S.A. de C.V., f/k/a Dina Autobuses, S.A. de C.V., 
Petitioners,
 
v.
 
James Hinton, Individually and 
as Representative of the Estate of Dolores Hinton, Deceased, et al., 
Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Tenth 
district of Texas
════════════════════════════════════════════════════
 
 
Argued March 24, 2010
 
            
Chief 
Justice Jefferson, 
dissenting in part.           

            
At the time this case was submitted to the jury, James Hinton[1] had neither received nor been promised 
any payments to settle his claims. Because the Court nevertheless concludes that 
Central Texas’ payments to the bankruptcy court’s registry rendered it a 
“settling person,” I respectfully dissent in part. 
1. 
       The statute requires courts to evaluate 
settling persons “at the time of submission.”
 
            
Former section 33.011—the statutory provision applicable here—defined “settling 
person” as:
a person who at the time of submission has paid 
or promised to pay money or anything of monetary value to a claimant at any time 
in consideration of potential liability . . . with respect to the personal 
injury, property damage, death, or other harm for which recovery of damages is 
sought.
 
Act of June 3, 
1987, 70th Leg., 1st C.S., ch. 2, § 2.07, 1987 Tex. 
Gen. Laws 37, 41 (amended in 1995 and 2003) (current version at Tex. Civ. 
Prac. & Rem. Code § 
33.011) (emphasis added). Because the statute stipulated that a settling person 
was one who, “at the time of submission” of the jury question, had paid or 
promised to pay, reviewing courts cannot consider a post-submission monetary 
exchange when determining whether a party was a settling person. See Knowlton 
v. U.S. Brass Corp., 864 S.W.2d 585, 598 (Tex. App.–Houston [1st Dist.] 
1993) (“[A] party who settles after objections are made to the charge, after the 
charge is read to the jury, and after closing arguments, although before the 
jury begins deliberating, is not a settling person because the settlement had 
not been effected at the time of submission.”), aff’d in part and rev’d 
in part on other grounds, sub nom. Amstadt v. U.S. 
Brass Corp., 919 S.W.2d 644 (Tex. 1996); Gilcrease v. Garlock, 
Inc., 211 S.W.3d 448, 454-55 (Tex. App.–El Paso 2006, no pet.) (holding that settlement agreements cannot be contingent on 
any other outcome, at the time of submission, in order to satisfy chapter 33). 

            
At the time the proportionate responsibility question was submitted to the jury, 
and throughout the course of the trial, Hinton had not settled any claims with 
Central Texas, and the funds that Central Texas placed in an interest-bearing 
account were never promised to any particular claimant. The bankruptcy court 
rejected the notion that the funds had a guaranteed trajectory, pointing to 
various contingencies, including the possibility that “some [of the claims] 
could be adjusted to zero.” As a historical fact, of course, “each participant 
in the Litigation Plan received within two percent of the amount determined by 
the mediator, with one exception,” ___S.W.3d at___, and “the Plaintiffs 
negotiated for and were the ultimate recipients of some of these proceeds,” 
id. at___. But those facts chronicle Hinton’s 
status after submission, which is irrelevant under the statute. The trial 
court appropriately viewed Hinton’s status at the time of submission, as no one 
could have known at that point whether Hinton would recover any of the remaining 
funds.
2.         Under Central 
Texas’ bankruptcy reorganization, claimants had two choices: guaranteed 
payment under the Apportionment Plan or contingent recovery under the Litigation 
Plan. 
            

            
The Apportionment and Litigation Plans do, in some ways, bear the marks of a 
settlement. Central Texas tendered money to the bankruptcy court to satisfy 
claims against it, and it was released from liability. At the time of 
submission, however, money had not been paid or promised “to a claimant,” as 
required under the statute, Tex. Civ. 
Prac. & Rem Code § 33.011, but rather deposited into a court 
registry—the ultimate distribution of which remained 
uncertain. 
            
Central Texas’ insurers deposited the $5 million policy limits into the 
bankruptcy court’s registry to set aside costs for the multiple bus crash 
claimants. Central Texas pledged to pay an additional $7,000 per year for five 
years, making the total amount available to such claimants around $5,035,000. 
Claimants were given two options regarding disbursement: (1) they could join the 
“Apportionment Plan,” in which a mediator would delegate a percentage of 
liability to each defendant, after which participating claimants could either 
immediately collect funds, or receive an apportionment in future litigation; or 
(2) claimants could join the “Litigation Plan,” in which participants chose a 
special judge, decided on the form of a proceeding, and ultimately reasserted 
their claims. As the bankruptcy judge noted, recovery under the Litigation Plan 
was contingent on proof that the defendants’ negligence “was a proximate cause 
of [the claimants’] injuries and/or damages. And then they had to prove, if they 
met that burden, the extent of the damages.” Based on the evidence 
presented, the special judge would make new liability determinations, assign 
amounts owed, and, if enough funds remained, allot those funds accordingly. 
Hinton chose the Litigation Plan.
            
The bankruptcy judge summarized the plans as follows:
 
One, it allowed the people that wanted their money now 
to take it. Those people who disagreed with their claim agreed that other people 
could take money, which diminished the pool. That’s a huge agreement. And number 
two, it provided that, among themselves, they could re-challenge their numbers, 
and when it was all done, re-look at their percentage, and they’d only get a 
percentage of what was left. . . . 
 
They did agree among themselves that, no matter—that 
they would start with the number they originally had been given in the 
apportionment plan. . . . And they agreed that, no matter what the new evidence 
showed, they wouldn’t increase their claim by more than ten percent. . . . 

 
. . . So, among themselves, they could go up or down 
some, but it wouldn’t be more than ten percent up; there was no limit on 
down. 
 
(Emphasis added.) 
            
To further complicate matters, the bankruptcy judge recognized that other 
potential parties later appeared to be “entitled to recover some of the 
[remaining] two and half million,” and that it may “turn[] out, for a number of reasons, that the litigation plan 
claimants are not entitled to it.” As to this potential outcome, the judge noted 
that Litigation Plan claimants could be left in the cold:
[T]he initial apportionment agreement, and the 
information available to whoever would look at that, has grown greatly. And, so, 
it’s certainly possible that the information provided to the special judge could 
result in one or more or all of the parties here, the litigation fund claimants, 
having their claims adjusted. It’s possible some could be adjusted to zero, just 
factually, just based on that information. 
 
Consequently, 
Hinton, as a “litigation fund claimant,” could not count on recovering any of 
the money set aside by Central Texas. 
            
The Court’s observation that “Plaintiffs had the option of requesting 
disbursement of their proportionate shares of the Fund,” ___S.W.3d at___, 
mistakenly lumps members of the Apportionment Plan with members of the 
Litigation Plan. Hinton, a member of the latter group, elected to try his claims 
in lieu of immediate receipt of his share of the insurance funds. It is true 
that the order approving the Apportionment Plan stipulated that 
[t]he parties may agree at any 
time to approve full or partial distribution of the Litigation Funds to any or 
all participants. Any agreement to distribute funds, however, must be agreed to 
in writing by all participants remaining in the Litigation Plan at the time the 
agreement is entered.
                                                                          

At the time the jury question was 
submitted, however, no party had attempted to enter into any such agreement, and 
even if any of them had, there was no guarantee that every other participant in 
the Litigation Plan would have agreed to such a distribution in writing. The 
parties rejected this option by refusing to enter into the Apportionment Plan in 
the first instance. 
            
In fact, the above provision more likely referred to those parties who had not 
yet decided whether to join the Litigation Plan, and therefore had an option to 
join the Apportionment Plan before re-litigating their claims under the 
Litigation Plan. The preceding provision in the order approving the 
Apportionment Plan supports this interpretation, since it mandates that 

[e]ach participant in the 
Litigation Plan agrees that any recovery from the Litigation Fund will 
necessitate that the claimant prove by a preponderance of the evidence . . . 
that the negligence of [the defendants] was a proximate cause of the 
participant’s injuries and/or damages; and . . . the amount of damages suffered 
by the claimant as a result of that negligence.
 
(Emphasis added.) The Apportionment 
Plan gave parties an opportunity to collect full or partial distribution of the 
funds. By rejecting this option, Hinton and others explicitly chose to 
re-litigate their claims. As the Court concedes, “the Litigation Plan did not 
set a floor on each claimant’s possible individual recovery.” ___S.W.3d at___.
3.         
Central Texas was not a “settling person” under the plain language of the 
statute.
            
While the Court correctly notes that “[t]he statute does not require certainty 
in the actual amount of the money or thing of monetary value,” ___S.W.3d 
at___ (emphasis added), the statute does require certainty as to the eventual 
receipt of money or thing of monetary value. See Tex. Civ. Prac. & Rem. Code 
§ 33.003; Hall v. White, Getgey, Meyer 
& Co., LPA, 347 F.3d 576, 582-83 (5th Cir. 2003) (applying Texas law), 
rev’d in part on other grounds, 465 F.3d 
587 (5th Cir. 2006); Gilcrease, 211 S.W.3d at 
454-55. 
            
The Court cites Gilcrease v. Garlock for the proposition that unconditional promises 
to pay are valid settlements for purposes of chapter 33. See Gilcrease, 211 S.W.3d at 455. 
Gilcrease holds that unconditional promises to 
pay are valid settlements, however, only so long as the promises are not 
contingent on any outside factors, such as related litigation proceedings. In 
Gilcrease, settling defendants had yet to pay 
the full amount they had promised claimants, but they had made 
unconditional promises to pay. Id. Payment was not contingent on 
bankruptcy proceedings, or on any other future arrangements between the parties. 
Id. The Gilcrease court 
distinguished the case before it from two other cases that themselves more 
closely bore a resemblance to the facts before us now, McNair v. 
Owens-Corning Fiberglas Corp., 890 F.2d 753 (5th Cir. 1989), and Cimino v. Raymark 
Indus., Inc., 751 F. Supp. 649 (E.D. Tex. 1990), rev’d, in part, on other grounds, 151 F.3d 297 
(5th Cir. 1998). 
            
In McNair, the Fifth Circuit held that notes promising payment did not 
constitute a settlement if their ultimate payment depended on the outcome of 
insurance litigation. McNair, 890 F.2d at 
755-56. In that case, asbestos plaintiffs received notes from two 
defendants who were in the process of litigating claims with their insurers. 
Id. Despite the fact that the notes constituted promises to pay, the 
court held that because payment was contingent on some future litigation—no 
matter how likely it was to end in their favor—the promise of payment could not 
be considered a settlement within the terms of the statute. 
Id.
            
The Gilcrease court next looked to a 
federal district court case, Cimino v. Raymark Industries, Inc., 751 F. Supp. at 656. In that 
case, plaintiffs reached a non-cash settlement agreement with an insolvent 
defendant who promised to pay a specified sum of money over a period of years. 
Id. The court held that, due to the defendant’s insolvency, the 
settlement agreement was more like a promissory note, since “[p]ayment [was] contingent on the outcome of the unstable . . . 
bankruptcy proceedings and on the continued financial viability of the 
[defendant].” Id. 
            
Like the defendant in Cimino, Central Texas 
(and its insurer) agreed to deposit money in the bankruptcy court. Hinton’s 
receipt of these funds, however, remained contingent on the outcome of the 
Litigation Plan proceedings, and on the existence of additional claims from 
outside parties. Despite Central Texas’ deposit of insurance funds, and its 
promise to pay a specified amount over a period of years, Hinton remained at 
risk of not recovering, and therefore, the agreement was at best akin to the 
“promissory note” in Cimino. 
            
Bankruptcy courts often provide a “settle or litigate” option like the one used 
here. See Georgene Vairo, Mass Torts Bankruptcies: The Who, The Why and The How, 78 Am. Bankr. L.J. 93, 102 (2004) (“If a 
settlement was not reached, the claimant could elect mediation, binding 
arbitration, or traditional tort litigation.”). Courts can 
distinguish between parties who choose to settle (like those under the 
Apportionment Plan), and those who choose to litigate (like those under the 
Litigation Plan). This ready distinction is evidenced by the terms of the 
bankruptcy court’s order approving and describing the two plans: 

 
All Bus Crash Claimants participating in the Litigation 
Plan agree to be bound by the terms and conditions of the Litigation Plan. A 
failure to elect payment . . . constitutes an agreement to be bound by the terms 
of the Litigation Plan. The participation of any Bus Crash Claimant in the 
Litigation Plan . . . shall not constitute a settlement or compromise of the 
claimant’s claims against the debtors.
 
(Emphasis added.) 
 
            
I would hold that the court of appeals erred in reversing the trial court’s 
refusal to submit Central Texas as a “settling person.” Because the Court’s 
holding regarding Chapter 33 neither complies with the statute (“at the time of 
submission”), nor properly construes the circumstances under which Hinton 
pursued his claims within the bankruptcy proceedings, I respectfully dissent 
from that part of the Court’s judgment. 
                                                                                                
___________________________
                                                                                                
Wallace Jefferson 
                                                                                                
Chief Justice 
 
Opinion Delivered: December 17, 
2010                                                        









[1] James 
Hinton is one of a number of plaintiffs whose claims are now before us. For ease 
of reference, I refer to them as “Hinton.”